## The People v. Nazaire Marion.

*Informations: Uttering forged instrument: Power of attorney: Certificates.* An information for ·uttering a forged power of attorney which alleges the forgery only of the certificate of acknowledgment and the annexed clerk's certificate of authentication, but sets out the uttering as of a forged power of attorney, is held good; the appended certificates may fairly be regarded as so far constituting a part of the completed power as to be included in the term used· to designate the instrument as a whole.

*Forgery: Certificate of acknowledgment.* The forgery of such certificates purporting to have been executed in another state is within our statutes, which are designed to cover any forgeries or uttering of forgeries in this state which could be used here for fraudulent purposes. .

*Forgery: Fraudulent purpose: Evidence.* The principal criminal element in forgery consists in the fraudulent purpose, and evidence of such of the sur· rounding circumstances as have a bearing upon the question of fraud is pertinent; and the proofs of fraud must be substantially the same in criminal and civil cases.

*Order of proof: Discretion.* An objection to allowing a witness to identify the instrument alleged to be forged until after it had been shown to be false is one that concerns only the order of proof, which is within the discretion of. the trial court.

*Evidence.* Testimony of a witness who resides in the county where the power in question purports to have been executed and acknowledged, and has dealt in lands and loans of money, and been in the habit of examining titles for fifteen years, that there were not over twelve or fifteen notaries in the county, is competent as far as it goes, as a basis for the further evidence that he had never heard of a notary in the county of the name signed to the certificate of acknowledgment.

*Forgery: Evidence.* Testimony of one who had personally known every clerk of the county and court named in the certificate of authentication, that no person of the name signed to such certificate had ever held that office, and giving the names of the persons who at the various periods were such clerk, is competent to show that the pretended certificate was a forgery,

*Forgery: Seal: Evidence.* Evidence of the falsity of the seal to a certificate purporting to be under the seal of a court of record is relevant to the issue of the forgery of such a certificate, as the falsity of the seal raises a strong presumption that the signature to the certificate is also false; and proof of the seal by comparison is competent.

*Evidence: Fraud: Res gestæ: Guilty knowledge.* Upon the charge of uttering as genuine a forged power of attorney, proof that both the power and the deed purporting to be executed in pursuance of it, were in the handwriting of one who was concerned with the defendant in the fraud and shared in the fruits of it, is competent as constituting part of the *res gestæ*, and also as having a bearing upon guilty knowledge.

*Evidence: Letters.* A letter in the handwriting of the defendant addressed to one who was a witness in the cause, seeking to impress him with defendant's version of the facts, and urging him to help him and to speak to the jurymen, and one addressed to another person requesting him to labor with the jurymen, and to promise them pay, are competent evidence.

*Requests to charge.* Requests to charge may properly be declined where the points involved have already been covered.

PEOPLE *v*. MARION.

*Uttering forged instrument : Request to charge.* Upon a charge of uttering a forged instrument requests for instructions as to who should be deemed the forger are immaterial.

*Forgery : Uttering : Fictitious signatures.* Proof that the names alleged to be forged were fictitious is sufficient proof of the forgery to sustain a charge of uttering a forged instrument.

*Clerk's certificate : Court of record : Forgery : Evidence.* A clerk's certificate of authentication purporting to be under the seal of a court of record and attached to a power purporting to have been executed in another state, is such an instrument as would have legal effect, if genuine, without proof that the court named was a court of record; and such proof is not essential to the question of the forgery of such certificate.

*Special questions to the jury : Statute construed.* The statute (*Comp. L.*, § 6026) providing for putting special questions of fact to the jury does not apply to trials in criminal cases.

*Heard January 14. Decided January 27.*

Exceptions from the Recorder's Court of Detroit.

*Byron D. Ball, Attorney General, S. Larned* and *Henry M. Cheever,* for the People.

*Alfred Russell,* for the respondent.

CAMPBELL, J.

This case, which was before us at the last term (*28 Mich.*, *255*) upon a question relating to the meaning of the information, now comes up after a further trial and second conviction, on exceptions to the rulings of the recorder.

A point was raised at the trial which, if sustained, would have put an end to the prosecution, and it is therefore necessary to consider it in the outset. It was objected that the information did not properly allege the forgery of the certificate of acknowledgment or of the appended clerk's certificate, and that as the forgery of the power of attorney was not set up in any issuable way, the charge was entirely defective.

When this case was formerly before us, it was held by the court that the only forgery fairly indicated by the information was that of the acknowledgment and clerk's certificate, and that the express reference to those gave the defendant to understand that this was all he would have

to meet. It is now urged that the charge does not even indicate this in any sufficient form. The ground of the objection is that defendant is only charged with uttering a forged power of attorney, and that the certificates form no part of the power, which is complete without them.

It is not claimed that such acts would not be the subject of forgery if purporting to have been made within the state, nor that the information does not clearly show that the forgery relied on was the fabrication of those documents; but the defense is based on the want of any sufficient allegation of the forgery of any thing but the instrument to which they were appended.

It is very well settled that a deed or a power of attorney may be valid as between the parties, and completely bind the grantor without any acknowledgment, unless the contrary is very plainly enacted. The acknowledgment is of a deed already executed. And if a defendant were charged with forging or uttering a forged deed, it would probably be no defense in most cases that the deed was not acknowledged.

But there are many purposes for which an unacknowledged deed is entirely useless. It does not prove itself. It cannot be recorded. It is invalid as against purchasers without notice, and cannot be proved by the registry though actually recorded.

Our statutes contemplate that all deeds shall be acknowledged, and provide for compulsory measures of proof where the grantor fails or refuses to make the acknowledgment.— *Comp. L.,* §§ *4216 to 4224.* An unacknowledged deed is regarded as exceptional and improper. Where a married woman's separate acknowledgment is required the deed is void as to her without it, and it is a necessary step in the conveyance.—*Dewey v. Campau, 4 Mich. R., 565; Fisher v. Meister, 24 Mich., 447.*

Common usage and the language of many sections of our statutes will not permit us to hold that where a deed has been acknowledged, the statutory certificate may not properly be

regarded as forming a part of the complete instrument. An acknowledged deed being the rule, and one not acknowledged the exception, it is the most natural form of expression to call the entire document a deed. Throughout the bill of exceptions the term "power of attorney" is frequently and generally used to embrace the appended certificates, even where objection is made to testimony affecting the latter. When a deed or the record of a deed is offered in evidence on a trial no one would imagine that all certificates belonging to it were not offered with it. An objection to such an offer, that the deed was not admissible alone, would be deemed frivolous. And an inspection of our recording laws will show that no meaning whatever can be attached to many provisions without giving such an interpretation to the various terms "deeds," "mortgages," "conveyances," and the like, as will include all their appurtenances. A similar remark applies to the tax laws, where the provision making deeds *prima facie* evidence occurs earlier in the section than that which requires them to be witnessed, acknowledged, and recorded, as in other cases.— *Comp. L.,* § *1057.*

We can see no reason for applying to an indictment for forgery any different rule than that which would apply in other cases, so long as the defendant is clearly informed of the precise charge against him. The statutes have been frequently amended so as to prevent failures of justice on trivial grounds. And where a word susceptible of two meanings is used with such averments as to show which sense is intended, the charge should be held good.

It may not be useless to refer to two or three precedents which bear upon this matter. In England it is made a specific felony to forge the attestation of a power of attorney. Mr. Archbold gives a form of indictment with two counts, one for the forging and the other for the uttering, and in the latter uses language almost identical with that used in the case before us, so far as this particular point is concerned. The uttering is referred to a certain "forged

power of attorney" with the name of the witness forged as an attesting witness to the execution thereof, the defendant knowing the witness's name and handwriting to be forged. The attestation is treated throughout as a part of the instrument, and there is no charge of uttering it separately.

In *Queen v. Ritson, L. R., 1 C. C. R., 200,* the parties to a genuine deed were held guilty of forgery for dating it back when they drew it, so as to appear to have been made earlier than a bankruptcy assignment. The language of the judges is very strong. *Blackburn, J.,* defines forgery to include any act which fraudulently makes an instrument "purport to be that which it is not." And while the date of a deed is not usually material, yet in that case it became so. It has been held by this court that whatever may be the date of a deed, the time of its actual delivery is presumptively fixed by the acknowledgment, as not made previously.—*Blanchard. v. Tyler, 12 Mich. R., 339.* And this ruling went upon the ground that the deed was incomplete for the purposes of record until acknowledged, and that such papers are intended to be recorded.

In *Regina v. Keith, 29 Eng. L. & Eq., 558,* it was held that a prisoner who had engraved an ornamental border similar to that used upon certain bank bills was guilty of engraving "part of a note" purporting to be part of the bill or note of the bank in question, although he had gone no further. The court say the statute uses the term "note" not in its strict sense as the legal promise or obligation, but in its popular sense, which includes everything appearing on the paper, and that the ornamental part of a bank note is as much a part of the note as the words. No one would be deceived by a counterfeit which lacked it.

We think this rule sensible and just. And we think the information in the present case sufficiently described the power of attorney as one purporting to be acknowledged and certified, so as to make all the certificates a part of the description of that complete instrument.

It was also objected that our statutes do not punish the forgery of such certificates and similar official documents as purport to have been made elsewhere than within this state.   As the acknowledgment and certifying of deeds of land in Michigan can only be had by virtue of the power given by our own laws for that purpose, they would necessarily be included by the narrowest interpretation.   But there is no reason to believe our statutes were not designed to cover any forgeries or utterings of forgeries here which could be used here for fraudulent purposes.

The remaining questions all arose out of rulings upon the trial.   The fraud complained of was the sale to one Edward Campau of certain interests in lands which were owned by the parties who purported to have executed the power of attorney.   Campau, acting upon the faith of this, and the assurances of Marion and Redmond, was induced to pay them the price of the land.   The attorney named in the deed, and who purported to have executed it, was Joseph Trombley, who was not seen by Campau, and who, upon the theory of the prosecution, is not a real person, or not the person who acted.

Testimony was received under objection, to show the preliminary dealings and representations of Marion with Campau, tending to prove among other things that Marion knew that Campau desired to buy out the interests of the alleged grantors, who were non-residents, and represented to Campau that he had found a man named Trombley who knew them and could get their power of attorney; that Campau wished him to write, and he afterwards reported that Trombley had arrived with the power, and Marion planned a meeting at Redmond's office to execute and deliver the papers; that Campau desired to see Trombley, and Marion took him at various times to places where he pretended Trombley was, but they never met him.   The deed was afterwards delivered at Redmond's office, and the money paid to Redmond and Marion.

We think the whole testimony pertinent to explain the fraud. The principal criminal element in forgery consists in the fraudulent purpose, and the proofs of fraud must be substantially the same in criminal and civil cases. It can only be made clear by a full understanding of the entire surroundings of the transaction. It was also objected that the witness was improperly allowed in this connection to identify the papers before they had been shown to be false. This, however, was only a matter of order, and if the papers had not been first identified it might quite as well have been objected that there was no propriety in showing their falsity until they were produced and shown to be material. The course pursued was the natural one, and the order of proof was discretionary.

Two signatures were alleged to be forged. One was that of Aaron Costello, who purported to have taken the acknowledgment as notary public in Alameda county, California; and the other, that of Louis B. Smith, who purported to have signed the accompanying certificate as clerk of the district court of that county. In order to prove these signatures fictitious, evidence was received from one William Clark Blackwood, who was himself identified by several leading business men of Detroit, and who lived in Alameda county, was formerly a lawyer but now a farmer, but who dealt in lands and loans of money, and had been in the habit of examining titles for fifteen years.

In regard to Costello he testified that there were not over twelve or fifteen notaries in that county. Objection was then made that this testimony was incompetent and had no tendency to prove there was no such notary, or that his signature was not genuine.

The testimony was certainly competent as far as it went, and a witness with that knowledge would be competent to state whether he had ever known of such a person, and if he had never heard of such a notary, the proof would be receivable for what it was worth, according as the jury might be satisfied of his means of knowledge. But the bill

of exceptions does not show what he said further, and we have no means of judging whether he did or did not give any improper testimony. We cannot presume any wrong was done.

In regard to Smith the testimony was that witness had personally known every clerk of the county and of the court in question, and that no such person was ever in that office. He also testified what persons were clerks at the various periods.

We do not know of any other way in which the official character of public officers can be shown in a collateral proceeding. The person holding the office *de facto* is the only officer known to the law until he is ousted, and his tenure must always be open and public, so that all persons may have the means of knowing it. This is one of the most familiar rules of law, and is not open to controversy.— *Facey v. Fuller, 13 Mich. R., 527; County Auditors v. Benoit, 20 Mich. R., 176; Scott v. Detroit Y. Men's Soc'y, 1 Doug. Mich. R., 119; Druse v. Wheeler, 22 Mich., 439.*

Proof of the seal by comparison was not incompetent. It is the only way in which such proof can usually be made at a distance, and as Lord Denman remarked on a similar question in *Collins v. Carnegie, 1 Ad. & El., 695,* "if not, it is difficult to say what proof would be sufficient."

Neither can it be said the testimony was irrelevant. If it is shown that a sealed certificate, which if genuine should have a genuine seal, is stamped with a false one, it raises a very strong presumption that the signature is false. It cannot be presumed to be likely that an officer would append a false seal to his own official certificate.

We think there was no error in allowing proof of the fact that the deed and power of attorney were both in Redmond's handwriting. The testimony had shown that Marion and Redmond were both concerned in the fraud which was perpetrated by means of the two documents together. In such a case the whole transaction is open to inquiry. A similar question was passed upon in *Perkins v.*

*People, 27 Mich., 386,* where upon a charge of forgery by the alteration of the amount secured by a mortgage, corresponding alterations in another contemporaneous paper were allowed to be proven, as having a bearing upon the question in issue. It was not only a part of the *res gestæ,* but with other proof it might have had a bearing also upon guilty knowledge.—*Archb. Cr. Pl., 366.*

Two letters were given in evidence proven to be in the handwriting of Marion, one addressed to a witness in the cause, seeking to impress him with his version of the facts, and urging him to help defendant, and to speak to the jurymen, and the other addressed to one Luke Trombley, requesting him to labor with the jurymen, and to promise them that they should be well paid. We can hardly think the objection to this evidence was made seriously.

Several errors are alleged upon the refusals of the court to charge as requested. Upon those points where charges were refused because already given, we think the case shows this was true. Others are disposed of by our previous remarks.

The request for instructions as to who should be deemed the forger was immaterial, as the charge was only of uttering and it was a question of fact and not of law. It was objected that under the information the proof that the names forged were fictitious would not sustain the charge. This was decided otherwise under similar allegations, in *Ann Lewis' case, Foster, 116,* cited with several others, in *Cogan's case, Leach Cr. Ca., 506.* Also in *John Taylor's case, Leach Cr. Ca., 255.*

We do not understand there is any conflict on this point in the authorities. If the persons alleged to have been defrauded were fictitious, the objection would have force.— *2 Bishop Cr. Pro., § 523.* But as the intent to defraud is alleged generally, no such difficulty exists.

The only other point referred to in these requests assumes that the certificate, if genuine, is not shown to be such that it would have had any legal effect, because

the court is not shown to have been a court of record. The certificate purports to be from the clerk of a court in California having a seal of office, which he affixes. The evidence of Mr. Blackwood is, that the seal of that court is the clerk's seal of office. In the absence of such evidence our courts are presumed to have judicial knowledge what courts in other states are of such a character that their clerks can lawfully certify under our laws. If this were not so, the certificates which entitle a deed to record would be of no service whatever, as the register is not allowed to require any other evidence.— *Shotwell v. Harrison, 22 Mich. R., 410; Morse v. Hewett, 28 Mich., 481.*

The only remaining question relates to the refusal of the court to direct the jury to find specially upon certain particular points of fact. The statute which provides for this practice is found in a chapter relating to the "Trial of issues of fact" (*chap. 103, R. S.; ch. 189, C. L., 1871*), the general purpose of which is to regulate the trial of civil causes, and many of its provisions are not only inapplicable but repugnant to the rules in criminal cases. There is a separate chapter devoted to "Trials in criminal cases" (*ch. 165, R. S.; ch. 261, Comp. L., 1871*), covering the same ground for them that is covered by the other chapter in regard to civil cases.

Unless an intention to the contrary is apparent, it would create much difficulty and confusion to blend the two sets of regulations, and presumptively the chapters must be confined to their respective purposes.

The section which provides for special findings allows "either party" by his counsel to require such findings, and requires the general verdict to yield in all cases to the special findings.—*Comp. L.,* § *6026.* As it is one of the most essential features of the right of trial by jury at common law, that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit, we

cannot suppose the legislature intended to introduce such a revolution into the criminal law by any indirection. It would be a forced construction to extend the operation of the section in that direction; and we think it is not admissible,—especially in view of the very serious questions which could not fail to be suggested by giving it that construction.—See doctrine and cases stated and noted in *Cooley's Const. Lim., 321, and notes.*

We find no error in the record. It must be certified to the recorder's court that judgment should be rendered on the verdict.

GRAVES, CH. J., and COOLEY, J., concurred.

CHRISTIANCY, J., did not sit in this case.