# COURT OF APPEALS OF TEXAS.

## AUSTIN TERM, 1880.

8 401
86t 262

### HENRY O. ROGERS v. THE STATE.

1. INTERPRETATION OF THE CODES. — In the adoption of a codified system of penal laws by the Legislature of Texas, in 1856, a fundamental purpose was to exclude any recourse to foreign laws in the designation or definition of offences, and to permit prosecutions for no other offences than those expressly defined by the written law of Texas, and to which penalties were affixed by it.

2. FORGERY. — The common-law definition of forgery was, "the fraudulent making or alteration of a writing to the prejudice of another's right;" and this definition was sufficiently comprehensive to include official as well as private writings, but has not been adopted in the Code of this State.

3. SAME. — Prior to the act of 1876, "to provide for the detection and conviction of all forgers of land-titles," the law of Texas on this subject was applicable only when the forged instrument was in the nature of a private conveyance or undertaking in writing which supposed a right in the ostensible maker to dispose of or change the character of property. Instruments in the nature of official acts were not within its provisions or purview.

4. SAME. — The fabrication of a certificate of a notary-public, purporting to authenticate the acknowledgment of a conveyance or transfer, was not, in 1873, an offence against the laws of this State.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

The indictment was found in May, 1878, and charged that the appellant, on July 1, 1873, forged the certificate of a certain notary-public of Cameron County to a transfer of a land-certificate for three hundred and twenty acres. The jury found the appellant guilty, and assessed his punishment at two years in the penitentiary.

401

The time of the fabrication of the certificate, according to the evidence, was July 1, 1873, as laid in the indictment. The evidence is elaborate, but no detail of it is necessary, in view of the single question of law determined in the opinion of the court.

·*Joe H. Stewart* and *Bethel Coopwood*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

Clark, J.   At the threshold of our investigations in this case, a grave question is presented touching the character of the instrument set out in the indictment and alleged to be ` forged, the solution of which depends alone upon a proper construction of our laws relating to the offence of forgery in force on the first day of July, 1873, the date of the alleged commission of the offence of which the appellant has been convicted.

A fundamental purpose to be subserved in the adoption of a general system of penal laws in 1856, and manifest from the terms of more than one general provision incorporated therein, was to exclude an appeal to any system of foreign laws, written or unwritten, in the designation or description of offences, and to hold no citizen amenable to criminal prosecution in this State unless the offence of which he was charged was expressly defined and the penalty affixed by the written law of this State.   Pasc. Dig., art. 1605. So careful was the law-making power in its endeavor to carry out this essential idea, and to provide proper safeguards for the protection of the citizen against prosecutions for acts not criminal under our law, that it was further enacted, in 1858, as amendatory of a provision substantially similar in the original Code, that "no person shall be punished for an offence which is not made penal by the plain import of the words of a law."   Pasc. Dig., art. 1611. These provisions are necessary to be borne in mind in as-

certaining whether a certificate of acknowledgment to an instrument for registration comes within the meaning of " an instrument of writing " as employed in our statutes relating to forgery. And this must be determined affirmatively before it becomes necessary to consider any of the other errors assigned by appellant as cause for reversal of the judgment of conviction.

At common law, one of the chief excellences of which system was its comprehensive adaptability to the ever varying phases of human conduct, an affirmative solution of the question, though not entirely free from difficulty, could nevertheless, in our opinion, be reached and sustained upon satisfactory principles. Its definition of the offence of forgery, to wit, " the fraudulent making or alteration of a writing to the prejudice of another man's right " (4 Bla. Comm. 247), is sufficiently comprehensive to embrace every character of writing, official or unofficial, and to render amenable to punishment any person who might concoct, manufacture, or alter any instrument whatsoever that could in any manner tend to the prejudice of another's right, provided the same was done with a fraudulent intent. And numerous cases could be readily cited showing convictions for forging almost every class of writing known to the affairs of men. But our Code, like all other works of a similar nature, possesses no such flexibility, and in its attempt to more specifically define many offences known to the common law, it often hedges the prosecution with new and arbitrary rules, which tend sometimes to the failure of justice; which may be, and most probably is, a lesser evil than an appeal to some vast and unfamiliar system of laws in order to sustain prosecutions for crime.

Our definition of forgery is as follows: " He is guilty of forgery who, without lawful authority, and with intent to injure or defraud, shall make a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would, if the same were

true, have created, increased, diminished, discharged, or defeated any pecuniary obligation, or would have transferred, or in any manner have affected, any property whatever." Pasc. Dig., art. 2093.

Without further legislative provision, this statute, standing alone, might be held sufficient to support a prosecution and conviction for forgery of a certificate of acknowledgment. The latter is certainly " an instrument in writing," in its common acceptation at least, and in some manner its fabrication would necessarily affect property of some kind. In the particular case at bar, the forgery of the notary's certificate to the transfer of the land-certificate, if in fact it was forged, gave the transfer additional efficacy as an instrument for use in the general land-office, besides apparently perfecting it for registration upon the county records of the State.

But the Legislature has left but little latitude to the courts for construction and interpretation of the statute itself, and the several terms and phrases employed in defining the offence. The terms, " instrument in writing," " alter," " another," " pecuniary obligation," etc., are all carefully defined and explained, so as to leave little or nothing to intendment in the administration of the law ; and these definitions are as much a part of the law of forgery in this State as the statute quoted at length. In ascertaining, therefore, what is meant by an instrument which would " in any manner have affected any property whatever," recourse must be had to the statute, and there we find its definition as follows : " By an instrument which would ' have transferred, or in any manner have affected,' property, is meant every species of conveyance or undertaking, in writing, which supposes a right in the person purporting to execute it, to dispose of or change the character of property of every kind, and which can have such effect when genuine." Pasc. Dig., art. 2103. The instrument assigned as a forgery in this case is certainly neither a conveyance nor an

undertaking, in any sense in which those terms can be employed, nor does it suppose a right in the person purporting to execute it (the notary) to dispose of or change the character of the land-certificate, nor could it have had such effect if genuine. But our decision need not rest on this ground.

Plainly to us, the legislative mind, in the enactment of the statute, was not contemplating an official but a private act, and the former is altogether excluded by the plain import of the language employed. It seems not improbable that if the legislative purpose had been to include an official writing or certificate like this before us, exact terms would have been used to manifest this intention, especially in view of the particular exactness with which it was sought to define every offence and to prescribe the essentials of each. And if the law had already fully provided for the punishment of this class of forgeries, it would not have been necessary that they should be included expressly in the act of July 28, 1876, which provides for the detection and conviction of all forgers of land-titles. Laws 1876, chap. 61. The fact that acknowledgments and proofs for record were then for the first time expressly enumerated as subjects of forgery, while not conclusive, is most significant as tending to manifest the legislative opinion that past legislation had failed to provide for that class of offences. Be that as it may, the laws in force at the time it is alleged this forgery was committed are unmistakable in their terms, and even a casual examination of them is most convincing that the act for which the appellant has been convicted was not provided for by the laws in force at the date of its alleged commission.

The authorities cited for the prosecution in support of the conviction, as well as others examined in the course of our investigation, being based altogether upon statutory provisions of a nature essentially different from ours, fail to support the proposition that in our State a conviction may

be had for forgery of a certificate of acknowledgment prior to the act of 1876. In *The People* v. *Marion*, 29 Mich. 31, a conviction of this character was sustained, but under a statute expressly providing for the punishment of any person who should falsely make, alter, forge, or counterfeit any certificate or attestation of any clerk, notary-public, etc. 2 Comp. Laws Mich. 1525. So also in New York, Pennsylvania, Massachusetts, and other States, similar statutes have long prevailed, upon which these decisions are based. 2 Whart. Cr. Law, sects. 1313–1417. Similar statutes have also prevailed in England for more than a century past, all of which were finally embodied in 24 & 25 Vict. c. 98; and upon these statutes most, if not all, of the decisions of that country, since the period indicated, have been founded. We have been able to find no statutes similar to ours in force in any other State, nor any adjudication by courts of last resort in other States, upon which this conviction can be rested.

Because the act for which appellant has been convicted was not made penal by the plain import of the words of any law in force at the date of its alleged commission, the judgment is reversed and the cause dismissed.

*Reversed and dismissed.*