## THE PEOPLE v. STEPHEN DURFEE.

*Homicide — Proof of threats by respondent—Offered prior to evidence of homicide—Held properly admitted in this case—Where respondent is prejudiced by admission of testimony out of its order, discretion of trial judge will be regarded as abused—Service of warrant by under and deputy sheriff—Immaterial which officer holds the process—Which imposes on both the duty to arrest the respondent—And on him submission to such arrest—Information—Indorsement of names of witnesses on —Not always possible for prosecution to know, in advance of trial, names of rebutting witnesses, or those needed on the main case—Some discretion must be allowed to trial judge in allowing names to be indorsed — Insanity — Law correctly laid down in charge — See pages 493-4 of opinion.*

1. On the trial of a respondent for murder, evidence of his threats made just prior to the killing was offered before proof of the homicide, and objected to on that ground.

| 62 | 487 |
|----|-----|
| 82 | 30 |
| 62 | 487 |
| 95 | 594 |
| 62 | 487 |
| 119 | 288 |
| 62 | 487 |
| 120 | 666 |
| 62 | 487 |
| f121 | 39 |

*Held,* that the testimony was *competent,* the objection going to the *order,* and not to the *materiality,* of the proof, and that the discretion exercised by the trial judge in receiving it was not error.

*Held,* further, that in cases where justice demands a different course to be taken, and the respondent has been prejudiced by not adhering to the general rule, the discretion will be regarded as abused, and courts of last resort will correct such error.

2. An *under-sheriff,* assisted by a *deputy-sheriff,* attempted to arrest a party on a criminal warrant at the time in the possession of the *deputy,* but both were acting in concert in its attempted execution, during which the party shot and killed the *under-sheriff.* On his trial for the homicide the warrant was offered in evidence, and objected to on the ground that it was held by the *deputy-sheriff* at the time of the shooting.

*Held,* that it was immaterial which officer had possession of the warrant, which imposed on the deceased the duty to arrest the *respondent,* and upon *him* submission to the arrest.

3. It is not always possible for the prosecution to know in advance what witnesses it may be necessary for the people to call when the trial commences, on rebuttal, or even in making out the main case, and there must necessarily be some discretion allowed to the trial judge upon this subject, that the ends of justice may be subserved.

4. On a review of the charge of the court regarding the alleged insanity of a respondent on trial for murder (see pages 493-4 of opinion),—
*Held,* that the views are in accordance with the doctrine held by the Court in *Roberts v. People,* 19 Mich. 401; *Welch v. Ware,* 32 Id. 77; *People v. Finley,* 38 Id. 484; *People v. Mortimer,* 48 Id. 37.

Error to Barry. (Hooker, J.) Argued June 23, 1886. Decided July 21, 1886.

Information for murder. Respondent convicted. Affirmed. The facts are stated in the opinion.

*A. R. McBride,* for respondent:

The rule requiring the *main* facts to be first proven is reasonable and just, and not discretionary: *People v. Hall,* 48 Mich. 482.

The statute requires the names of the witnesses to be indorsed upon the information, and the defendant has a right to know what witnesses are to be sworn against him: *People v. Quick,* 58 Mich. 321.

*Moses Taggart,* Attorney General (*Philip T. Colgrove* of counsel), for the People.

SHERWOOD, J. The respondent was charged with murdering William Scudder (under-sheriff of the county of Barry) on the fourteenth day of May, 1884.

He was arrested for the crime charged on the same day, and waived an examination.

On the nineteenth day of August, 1884, the respondent was arraigned, pleaded not guilty, and on the twenty-seventh of August following his trial commenced, and continued through the three days following, when the case was submitted to the jury, and he was found guilty of murder in the first degree, and sentenced to State prison for life.

The case is now before us for review. The bill of exceptions is quite full, and contains all the testimony on the subject of insanity of the defendant; and the bill states, further, that it " contains all that was given upon the trial material to the questions raised."

Scudder was shot instantly dead, while attempting to arrest the respondent near his house in the town of Rutland, in said county, by virtue of a warrant then in his possession.

Ten errors are assigned by counsel for respondent as grounds for reversal.

It appears that a Mr. Thorp had, some time previous to the killing, a civil suit against the respondent, in justice's court, and had obtained a judgment against him, and respondent had appealed the case to the circuit. The case was on the calendar for trial at the May term, 1884, and the respondent desired to continue the case, and two days before the homicide occurred he was in conference with his counsel, Mr. Van Arman, upon the subject, and was told by his counsel that he could not make the necessary affidavit for the purpose. Respondent then said he would come into the court-room, and make an affidavit before the court that he would kill any man that would undertake to interfere with his property in the realization of the judgment.

The case, on appeal in the circuit, was tried therein the next day, and judgment again went against the respondent; and on the morning of the day of the killing he inquired of his counsel, Mr. Van Arman, the result in his case; and on be-

ing informed and advised that he had better pay it, that if he did not they would issue an execution and sell his property, respondent replied that he did not, in equity, owe the debt, and never should pay it, and that he would kill any man that undertook to collect it, or to interfere with his rights or his property in the realization of the judgment.

This testimony, given by Van Arman, was objected to upon the ground that it had not yet been shown that any crime had been committed ; that, while it was the theory of the prosecution that the respondent fired the pistol ball that killed Scudder, it was the belief of respondent that the ball that did the fatal work was shot from a pistol fired by Mr. Geer, who was a deputy-sheriff, and at the time of the killing was assisting Under-sheriff Scudder.

Of course, the testimony was offered for the purpose of showing that the killing was from a certain motive, and premeditated. It was competent testimony in the case, and the objection went to the order, and not to the materiality. It was admitted in its chronological order, and the discretion used in receiving it at the time it was offered worked no harm to the respondent. Its admission was not error. *People v. Marion*, 29 Mich. 37 ; *People v. Saunders*, 25 Id. 119 ; *Hutchins v. Kimmell*, 31 Id. 126 ; *Morse v. Hewett*, 28 Id. 481 ; *Hulbert v. Hammond*, 41 Id. 343 ; *Kempsey v. McGinniss*, 21 Id. 123 ; *Hoffman v. Harrington*, 44 Id. 183 ; *Brown v. Marshall*, 47 Id. 576.

In cases where justice demands a different course to be taken, and the respondent has been prejudiced by not adhering to the general rule, the discretion will be regarded as abused, and courts of last resort will correct such error. *People v. Hall*, 48 Mich. 482 ; *People v. Millard*, 53 Id. 63.

No such result, however, was probable, or even possible, as this case stood when the evidence was received.

The respondent's counsel objected to the introduction of the warrant in evidence under which it was sought by Scudder and the deputy-sheriff to arrest the respondent at the time of the shooting. It is not claimed that the writ was invalid, but that Geer held it at the time instead of Scudder.

The court held, and so charged the jury, that it made no difference which one held the warrant, so long as the two went there to serve it, and acted in concert in the discharge of that legal duty. This holding was correct, and the testimony was not objectionable upon any ground that we have been able to discover. No defect appeared upon the face of the warrant. It imposed upon Scudder the duty to arrest the respondent, and upon the latter submission to the arrest. *Sweet v. Negus,* 30 Mich. 406.

The third error assigned relates to a conversation respondent had with his counsel in the jail, and which was overheard by Deputy-sheriff Geer. When Mr. Geer was sworn, he was examined on the part of the prosecution, and cross-examined by respondent's counsel, and discharged. He was subsequently recalled for further cross-examination by respondent, and in the testimony then given the witness' attention was called to the fact of a conversation with the respondent's counsel in jail, and which was overheard by the witness. On the redirect examination the witness was asked to give the conversation he overheard, and counsel for respondent objected, but no ground is stated for the objection, and we think the evidence obtained in answer to the question was unobjectionable, and no more need be said upon this point. *Hartford Fire Ins. Co. v. Reynolds,* 36 Mich. 502; *People v. Barker,* 60 Id. 277.

The fourth error assigned relates to the failure of the prosecutor to place upon the information the names of eight witnesses for the people, before the trial began, or before the respondent had rested his case.

These witnesses were used on the people's rebutting case, and most of them upon the subject of respondent's insanity.

When these witnesses were called no objection was made to their being sworn, but to their being examined. When the objection was made the court ordered their names to be placed upon the information. Their names were not formally placed upon the information, but the order was sufficient for that purpose. The bill of exceptions does not appear to contain all the testimony given upon the trial, nor

all the proceedings had thereon. Undoubtedly, satisfactory reasons were given which induced the court to make the order he did in relation to these witnesses. And it is not always possible for the prosecution to know in advance what witnesses it may be necessary for the people to call when the trial commences, on rebuttal, or even in making out the main case, and there must necessarily be some discretion allowed to the trial judge upon this subject, that the ends of justice may be subserved. It is to this end all rules must be made to conform, and all statutes construed, or the law would become a snare rather than a means of protection and safety. After a careful perusal of the record we fail to discover any injustice done to the respondent by the course pursued by the circuit judge, and we think no error was committed in his rulings upon this objection.

The fifth assignment of error relates to the testimony of the witness Otis, given on rebuttal, as to statements made to him by Geer after Scudder was shot, to the effect that a short time after the killing Geer did not tell the witness that Scudder shot to scare the respondent, or to let him know he was armed. This interview took place between the witness and Geer immediately after the shooting occurred, and while Geer was in pursuit of the respondent to arrest him. A witness by the name of Bruss had been called, and testified to the conversation for the purpose of impeaching Geer, and Geer was recalled as to this conversation, and asked the question objected to, which related to the same conversation. We think it was competent for the court to allow so much of the conversation to be given on the occasion as related to the matter queried after. The exception was not well taken under the rulings of this Court in *Stewart v. People*, 23 Mich. 63 ; *Arnold v. Nye*, Id. 295.

The sixth assignment of error refers to the testimony of a Mr. Cressy, who was examined on the part of the people regarding the wound that was inflicted by the respondent, and as to conversations with him. On the cross-examination he was asked the question whether the respondent had stated to witness that he knew Scudder's business. Objection to this question was sustained.

This question was asked after the witness had stated that respondent said nothing about the arrest, nor mentioned anything about Scudder's having a warrant for him. We see no error in this ruling, and if the respondent did know all about Scudder's business, certainly the fact could be of no benefit to the respondent in making his defense, and, if he did not, that fact already appeared by the testimony the witness had given.

After the testimony was closed counsel for the respondent presented seven requests to the court to charge. The first two were to the effect that the respondent could not be convicted of either the first or second degree of murder. These two requests were properly refused. The testimony strongly tended to show him guilty of murder in one of the degrees, and it was the duty of the court to submit the case upon its facts to the jury. All that was competent to go to the jury in the remaining five requests was given in the general charge.

The remaining three exceptions are to the following paragraphs of the charge. The particular portions excepted to are included in brackets. We give these in connection with the language of the court immediately preceding them, in each case, that the meaning intended may be properly understood.

In the first paragraph the circuit judge said:

" It must appear in this case that the defendant is a man of sound mind. Now, by 'sound mind' is not meant a mind which is the equal of any mind possessed by any mortal in the world. We all know that there is a difference in the minds of our acquaintances. Some men are very bright, others are very dull; but they are held accountable. Perhaps it would be enough to say—and to leave it right here— that if, by reason of disease, the defendant was not capable of knowing he was doing wrong in the particular act, or if he had not the power to resist the impulse to do the act by reason of disease or insanity, that would be an unsound mind. But it must be an unsoundness which affected the act in question, and not one which did not affect it. There is a simple question for you.

" You have heard the evidence in the case, you know what the circumstances are, and you can judge from all the evidence in the case—including the transaction itself, and his conduct at the time —whether or not he exhibited evidences which leave a reasonable doubt in your minds of the soundness of his mind in that transaction. Did he know what he was doing,—whether it was right or wrong? and if he did, then did he know or did he have the power, the will power, to resist the impulse occasioned? You are not to draw the inference because a man acts frantically mad and angry, very angry, that he does not resist the impulse,—that that is unsoundness of mind.

" [This unsoundness must be the result of a disease, and not the result of his having allowed his passions to run until they have become uncontrollable. We frequently meet men in courts of justice who claim that they have committed a crime because they· were drunk. The law holds them responsible, because they should not have got drunk; they should not have formed the habit. So the law requires of a man that he will curb his passions and restrain himself, and, if he does not do it, holds him accountable, unless it is by reason of disease which renders him unable to do it.] "

These views are in accordance with the doctrine held by this Court. *Welch v. Ware*, 32 Mich. 77; *People v. Finley*, 38 Id. 484; *People v. Mortimer*, 48 Id. 37; *Roberts v. People*, 19 Id. 401.

In the second and third paragraphs the court said to the jury:

" We may properly spend a few minutes here in discussing what is meant by a legal execution of duty. It is a very proper way for an officer to serve a warrant to go quietly to the person, and inform him that he is an officer or sheriff of the county, as the case may be, that he has a warrant for his arrest, and take him into his custody. That is a very proper way, and it is the duty of the man to submit. There may be cases, however, where it is entirely unnecessary to do anything of the kind, for the reason the person knows, or has reason to know, what errand the officer has. Because of the known character or former conduct of the man such a course might be entirely unsafe. We can any of us imagine. where that course would never result in an arrest, or, at least, frequently would not. There are characters—desperadoes—in portions of our country where the only way to

make an arrest is by a show of power; in that case the law justifies it. The law never justifies an officer in an unreasonable display of force, nor unreasonable conduct in anything; it does justify him in taking a course which is reasonably necessary.

" You are the judges in this case whether this attempt to make the arrest was one which was made in a reasonable manner, or whether it was not. In the one case, if it was, it may have been a legal execution of his duty; in the other, it may not. [I instruct you, with regard to the entire proposition, that if you find that Geer was in possession of the warrant; that the two went in there together,—acted in concert; or that one went up to make the arrest while the other one stood at the gate hitching the horse,—it makes no difference who had the warrant; they were men in the execution of their duty; so far as the possession of the warrant was concerned it would make no difference.]

" So, in discussing this question of defense of liberty, these questions arise:

" 1. Was the deceased an officer in the legal execution of his duty?

" 2. Did the defendant know or believe it?

" If these men were properly engaged in trying to arrest Durfee, the law protected them; and, if Durfee was advised of or believed the fact, it was his duty to submit; and it makes no difference what led him to believe it. If under such circumstances he took Scudder's life, the act was murder in the first or second degree. If, however, he did not know or believe it, he would be guilty of manslaughter only, provided, of course, that he acted in good faith, as will hereafter appear; while, if the officer was not in the legal performance of his duty, but was engaged in an unlawful effort to arrest or restrain defendant, he would be guilty of no crime whatever.

" It should be added that to reduce the grade of the offense, or take from the act the element of crime altogether, it must have been done in good faith by the defendant, in the honest belief of its necessity, under the circumstances as they reasonably appeared to him at the time. The same rule as to necessity as in case of fear of bodily harm applies."

" [If you shall find that Scudder went up there with a warrant,—which I may as well tell you now was a valid warrant,—if he went up there for the purpose of arresting Durfee, and he made such an attack upon Durfee as gave Durfee a right to believe that he intended him serious bodily

harm, in ignorance of the officer's errand, it would make no difference with the right of self-defense; but if, on the contrary, he went there to make the arrest, and Durfee did or did not know what his errand was, if he did not fear bodily harm, he may defend to prevent restraint. Then, if he was in ignorance of his authority and communication, the offense might be manslaughter, but not less than that. If he knew his authority and intention, the offense would be murder, because it would then be his duty to submit.]"

We think it would be difficult to find the law applicable to the facts contained in this record more clearly or correctly stated upon the three questions made by these exceptions.

We have critically examined the entire charge given in this case by the learned circuit judge, and it has seldom been our privilege to review one wherein the rights of the prisoner seem to have been more carefully guarded, or where the law applicable to the facts was more fully and plainly stated.

The record shows a fair trial, and no error, and the judgment must be affirmed.

The other Justices concurred.