## PEOPLE v. TOWNSEND.

1. CRIMINAL LAW—ASSAULT BY SHOOTING—PROVOCATION.

On a prosecution for an assault by shooting, respondent is not entitled to an instruction that the jury may consider, on the question of provocation, the alleged fact that the complaining witness had boasted that he would betray respondent's fiancé, where it conclusively appears that respondent learned all that he knew upon that subject nearly a month before the shooting, and that complainant and he had parted friends the previous night; especially if his own testimony negatives the theory that it was the information in question that moved him to commit the assault.

2. SAME—INFORMATION—INTENT.

A conviction of assault with intent to do great bodily harm less than murder may be had, on proper evidence, under an information charging assault with intent to kill.

Exceptions before judgment from superior court of Grand Rapids; Burlingame, J. Submitted May 3, 1899. Decided July 11, 1899.

Edward L. Townsend was convicted of assault with intent to do great bodily harm, less than the crime of murder. Conviction affirmed.

*William F. McKnight* and *L. E. Knappen,* for appellant.

*Horace M. Oren,* Attorney General, and *Frank A. Rodgers,* Prosecuting Attorney, for the people.

MOORE, J.    An information was filed against respondent, charging him with an assault upon Charles Hufford with intent to kill and murder.    Respondent was convicted of an assault with intent to do great bodily harm, less than the crime of murder.    The case is here upon a bill of exceptions before sentence.

The record discloses that respondent, at the time of the commission of the offense, was a little more than 20 years old.    Prior to April 28, 1898, he had been paying attentions to Miss H., and they finally became engaged to be married.    They had occasional estrangements, though the engagement continued.    April 28th respondent left Grand Rapids for a few days.    Upon his return he was informed by one Blum that during his absence Charles Hufford and Miss H. had been riding with each other. He claims he was also told that Hufford said his purpose in going with Miss H. was to betray her.    Mr. Hufford denied he had ever made such statement.    The respondent expostulated with Miss H., and, she says, threatened to shoot Hufford and one Russell.    He also had an interview with Hufford, and proposed they should fight a duel, Hufford to have the choice of weapons.    Hufford disclaimed any knowledge of the engagement, and he, the respondent, and Blum went to the house of Miss H., and called her to the window, where she says she was asked if they were engaged, and she replied, "Yes."    As early as April 28th, Miss H. says, though still engaged to respondent, that she had told him "enough times" she would not marry him.    After respondent's return to Grand Rapids, and his expostulating with Miss H., the engagement was broken off.    The respondent felt very badly about this, and sought to have it renewed.    For the purpose of talking over the engagement, he invited Miss H. to ride with him; and she says, when she told him she would not renew the engagement, he presented her a revolver, and asked her to kill him.    He says the engagement at that time was renewed.    On the 29th of May, respondent attended the funeral of the father of a friend

of his. After the funeral, he drove to the park. Just before getting there, he passed Miss H., who was with a friend, Miss G., but said nothing to them. Near the entrance of the park, he saw Blum, and inquired of him if he had seen Hufford. Miss H. and her friend continued on to the entrance of the park. Hufford was in the park, with an acquaintance, Miss E. He came to where Miss H. and Miss G. were, and invited them to go into the park and meet Miss E. They accepted the invitation. The respondent's version of what occurred is as follows:

"I think I met Blum at the park before I spoke to Miss H. I have no recollection of asking him about Hufford. All that I did was to pass the time of day with him. I didn't ask any questions, that I remember of. I am sure I didn't. I next saw Miss H., Miss G., and Mr. Hufford as they started to go up the steps towards the pavilion. Hufford was assisting Miss H. The other ladies were going along singly. I walked around awhile. Then I went up in that direction, and saw them as they were about to sit down, or were sitting down. I called Miss H. aside, and asked her if I could speak to her a moment. I wished to ask her if I could spend the afternoon with her. She did not come with me when I asked her to step to one side. She took, I should judge, four or five, six or seven, steps from that place, in a western or northwestern direction, towards the pavilion. After going this distance, she said, 'If you want to say anything to me, you can say it right here.' I think those were the words. I said, 'All right, I will.' At that moment I glanced towards Mr. Hufford, who was at the south end of the bench. I saw him walk around the bench and step towards me. He had his hand—I think it was the left hand—in his hip pocket, and he gave me what I considered a very threatening look. His manner and attitude frightened me somewhat. It looked very strange. I thought that he was going to shoot me. I really believed that. I pulled my revolver and shot at him,—in that direction. When I did so, I still believed he was intending to shoot me. I believe so yet. I had no design of injuring him. I had not, up to that moment, any design of shooting at him or using any violence towards him. I shot because I thought it was the only way to protect myself. I felt bad and nervous and worried, but I am not

what I consider excitable. I would not have fired at him at that time but for that belief that he was going to shoot me. I thought at the time that it was necessary to do that in order to protect myself, and I think so yet. When I saw him fall, I thought perhaps I might have killed him, and I started, not thinking what I was doing, and ran towards the southwest part of the woods."

The testimony of Hufford is that he was standing near the bench which he had procured for the young ladies, with his hand lying on the back of the bench; that he was not advancing towards respondent, and did not put his hand in his pocket, and had no revolver; that, when respondent raised his arm and fired, Hufford flung up his left arm, the bullet passing through it.

Counsel for respondent group the assignments of error as follows:

1. Refusal to submit to the jury certain of respondent's requests relating to the right of self-defense.

2. Refusal to instruct the jury upon respondent's theory of provocation, as reducing the offense to assault and battery.

3. Permitting a conviction for assault with intent to do great bodily harm, less than murder.

4. Permitting the prosecuting attorney to put to respondent and his witnesses improper and prejudicial questions, and to address to the jury improper and prejudicial remarks.

Counsel for respondent presented to the court 52 written requests to charge. Many of them were given just as presented by counsel. The substance of others was given in the general charge. Others of them were refused.

As to the first group of assigned errors: The court charged the jury very fully and fairly as to respondent's right of self-defense, and his right to act upon appearances, even though he was mistaken as to the fact. Each phase of this feature of the case was fully covered.

As to the second group of assigned errors: The court was requested to charge the jury as follows:

"It is claimed on the part of respondent that, a short

time before the assault complained of, respondent had been informed that Hufford was attempting to alienate from respondent the affections of the woman with whom respondent was under engagement to marry, and had boasted of his intention to have sexual intercourse with such woman, and that, at the time of the commission of the assault, respondent was laboring under the influence of passion and excitement produced by such alleged misconduct on the part of Hufford. The seduction of one's wife is regarded in the law the highest provocation which can be given a man. It is for you to determine, under all the evidence in the case, whether the alleged alienation of the affections and the alleged attempted seduction on the part of Hufford of respondent's affianced wife was an adequate and reasonable provocation, sufficient to disturb respondent's passion to an extent which might render an ordinary man, of fair average disposition, liable to act rashly or without due deliberation or reflection, and from passion rather than judgment."

There were other requests based upon the same theory, and expressing the same idea in different verbiage. Because the court refused to give these requests, it is said he committed error. We cannot agree with counsel in this contention. The record does not disclose any act or language on the part of Hufford that should have led the respondent to believe Miss H. was likely to be betrayed by him. Whatever he had learned as bearing upon that question occurred nearly a month before the shooting. According to his testimony, the anger which resulted from this information had disappeared. In his testimony, he said of Hufford that he had seen him and visited with him the night before the shooting. "We were good friends at that time. Just a short time before that I took him to the opera-house." There was no claim in the testimony of respondent that he did the shooting before "cooling time" had elapsed, and in the heat of passion. His theory was that he thought Hufford was about to shoot him, and would do so unless he shot Hufford. The court very properly refused these requests. Even if the requests were a fair statement of the law,—and we do not express the opinion that they are,—there is no testimony in the

case upon which to base them. *People* v. *Finley*, 38 Mich. 482; *People* v. *Mortimer*, 48 Mich. 37; *People* v. *Durfee*, 62 Mich. 487.

The next group of errors is, "Permitting a conviction for assault with intent to do great bodily harm." It is said the jury should have either convicted of the main offense charged, or of assault and battery, or should have acquitted, and that there was no room for a conviction of an assault with intent to do great bodily harm, less than murder. It is true, the prosecuting attorney, when seeking a conviction of assault with intent to murder, argued to the jury that, under the evidence, they must convict of that offense, or acquit the respondent. That, however, was but the expression of the opinion of counsel as to the effect of the testimony. It was not the opinion of the trial judge, who charged the jury fully, as it was his duty to do, as to what constituted the offense of assault with intent to do great bodily harm, less than the crime of murder, as well as what constituted the main charge and the offense of assault and battery. We have held that, under an information like this, the accused may be convicted of the lesser offense of an assault with intent to do great bodily harm, less than the crime of murder. *People* v. *Prague*, 72 Mich. 178. There was an abundance of testimony from which the jury were warranted in finding the respondent guilty of the offense of which they convicted him.

It would not be profitable to discuss the assignments of error in relation to the admission and rejection of testimony, further than to say that, if the court erred at all, it was error in favor of the respondent, rather than against him. So far as any of the argument of the prosecuting attorney was objectionable, the error was cured by the prompt action of the court. We think the respondent has had a fair trial.

The conviction is affirmed, and the case is remanded to the court below for further proceedings.

The other Justices concurred.