PEOPLE *v.* GETTERSON

CRIMINAL LAW—DEFENSES—INSANITY—STANDARD OF INSANITY—
APPEAL AND ERROR—COURT OF APPEALS—BINDING PRECEDENT.
   The "right-wrong, irresistible impulse test" for criminal respon-
   sibility remains the law until the Michigan Supreme Court
   or the legislature changes it and, until the rule is so changed,
   the Court of Appeals is bound by established precedent to con-
   form its holdings to the "right-wrong, irresistible impulse
   test".

Appeal from Berrien, Chester J. Byrns, J. Sub-
mitted Division 3 November 9, 1970, at Grand
Rapids. (Docket No. 8462.) Decided February
23, 1971. Leave to appeal denied March 14, 1972,
387 Mich —.

Ralph Getterson was convicted of assault with
intent to do great bodily harm less than murder.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Ronald J. Taylor,*
Prosecuting Attorney, and *Hugh W. Black,* Assist-
ant Prosecuting Attorney, for the people.

*Keller & Keller* (by *Harry J. Creager*), for de-
fendant.

REFERENCES FOR POINTS IN HEADNOTES

21 Am Jur 2d, Criminal Law §§ 28, 36–39.
Irresistible impulse as excuse for crime.   70 ALR 663, s. 173
   ALR 392.

Before: T. M. BURNS, P. J., and R. B. BURNS and
MUNRO,* JJ.

PER CURIAM.   Defendant was charged with two
counts of assault with intent to murder, MCLA
§ 750.83 (Stat Ann 1962 Rev § 28.278).   To both
counts defendant pled not guilty by reason of in-
sanity.   He was convicted by a jury on two counts
of the lesser included offense of assault with intent
to do great bodily harm less than murder.[1]

Defendant requested that the trial court give the
following instruction to the jury:

" * * * If you find the defendant, Ralph Getter-
son, was in fact suffering a mental disease and
that the unlawful act of October 31, 1967, which
is the subject of this prosecution, was the product
of and was caused by such mental disease and ab-
normality, then you must find him not guilty by
reason of insanity, even though you find that he
may be able to distinguish between right and wrong
or that he did not have an irresistible impulse to
commit the act in question   *   *   * "

The trial judge refused to give the requested in-
struction.   Instead, he instructed the jury:

"The defendant in this case, ladies and gentlemen,
has entered a plea of not guilty by reason of in-
sanity, and evidence has been introduced in his
behalf to show that at the time of the commission
of the alleged offense, or in this case there were
two offenses, one against Mr. Arndt and one against
Mrs. Arndt, that he was laboring under such a
defect of reason from a disease of the mind as not
to have a sufficient mental capacity to know the
nature and the quality of the act or acts committed,
or that if he did actually know it, that is, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.
1 MCLA § 750.84 (Stat Ann 1962 Rev § 28.279).

nature and the quality of the acts committed, that he did not know that he was doing wrong, or, even if he did know he was doing wrong, that he did not have the power to resist doing the act or the acts.

\* \* \*

"A man is sane and legally responsible for his acts when he possesses sufficient mental capacity to distinguish right from wrong, to understand the nature and the consequences of his acts, and has sufficient mental capacity and control to enable him to apply that knowledge to his own case or to a situation that is presented for [*sic*] [to] him.

"The law does not require that a person have a normal intelligence or sensibilities in order that he be deemed sane, or that he be educated to any particular degree, or that he act or otherwise conduct himself as do normal people. Acts committed in passion, jealousy, anger, excitement are not excused on a claim of insanity unless the person doing such act does not have the mental capacity to know that such acts are wrong. The test is, did such person have sufficient mental capacity to know and to distinguish between right and wrong or to control his acts at the time of the commission of the alleged offenses."

Defendant here contends that the current Michigan test of criminal responsibility, first expressed in *People* v. *Durfee* (1886), 62 Mich 487, and commonly known as the "right-wrong, irresistible impulse test", should be replaced with the test set forth in *Durham* v. *United States* (1954) 94 App DC 228, 241 (214 F2d 862, 874, 45 ALR2d 1430, 1445), which is:

"[A]n accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect."

The defendant does not here contend that the instruction given does not conform to the rule enun-

ciated in *Durfee,* but rather that the rule in *Durfee* should be replaced by the rule in *Durham.*[2]

This Court has recently refused to replace the *Durfee* test with the *Durham* rule.[3]  Defendant refers us, however, to *People* v. *Krugman* (1966), 377 Mich 559, 562, where the Court stated:

"Had defendant properly requested a charge in accordance with the *Durham* rule, our task would have been somewhat different.  Then we would have been obliged to decide whether this Court in the exercise of its common-law authority should adopt a new test for determining criminal responsibility or continue to adhere to the venerable, if not venerated, right-wrong test and the irresistible impulse test. See *People* v. *Durfee* (1886), 62 Mich 487.  When, and if, such a choice is squarely presented to us, we shall have to review the desirability of changing the law in Michigan with regard to  *  *  *  the principle announced, and thence seemingly overlooked, in *People* v. *Garbutt* (1868), 17 Mich 9, 23: '[I]f it appeared from the evidence that defendant was afflicted with insanity, and such affliction was the efficient cause of the act, he ought to be acquitted by the jury.' "

This Court is aware, therefore, that the present rule of criminal responsibility in Michigan may be reviewed and changed by the Supreme Court.  However, until that Court or the Legislature[4] changes

---

[2] It is defendant's contention, relying on many psychiatric, psychological, and law review articles, that only the *Durham* rule recognizes the sophisticated level to which psychiatry has progressed since the *Durfee* rule was announced.  See Glueck, *Law & Psychiatry,* (The Johns Hopkins Press, 1962); Cohen, Criminal Responsibility and the Knowledge of Right and Wrong, 14 U Miami L Rev 30 (1959).

[3] *People* v. *Markham* (1969), 19 Mich App 616; *People* v. *Morris* (1968), 10 Mich App 526.

[4] The Michigan Legislature presently has before it the Michigan Revised Criminal Code (Final Draft, September 1967).  Section 705 of that code proposes the following test of criminal responsibility (p 72):

the existing rule, we are bound by established precedent to conform our holding to the long-standing rule set forth in *Durfee*.[5]

Affirmed.

---

"A person is not criminally responsible for his conduct if at the time he acts, as a result of mental disease or defect, he lacks capacity to conform his conduct to the requirements of law."

[5] *People* v. *Cole* (1967), 8 Mich App 250.