PEOPLE v WHITE

1. CRIMINAL LAW—DEFENSES—INSANITY.

A criminal defendant is entitled to the defense of insanity if at the time the act was committed, a disease of the mind caused the defendant not to know right from wrong or if, knowing right from wrong, he could not resist the impulse to commit the act.

2. CRIMINAL LAW—DEFENSES—INSANITY—EPILEPTIC SEIZURE.

A defendant was entitled to a verdict of not guilty by reason of insanity if his proofs sufficiently established that at the time the stabbing occurred he was suffering from an epileptic seizure which prevented him from knowing what he was doing.

3. CRIMINAL LAW—DEFENSES—INSANITY—PRESUMPTION OF SANITY—SUFFICIENCY OF EVIDENCE.

Testimony of a psychiatrist who interviewed the defendant for one hour, accepted everything the defendant told him as true, ran no tests on the defendant, and did not inquire as to the medication being used by the defendant, that the defendant could have been suffering from an epileptic seizure at the time of the stabbing which prevented him from knowing what he was doing, entitled the defendant to a jury instruction on the defense of insanity even though the prosecution's expert witnesses who had examined and tested the defendant testified that the tests revealed that it would be impossible for the defendant to have been suffering from a seizure at the time of the homicide.

4. CRIMINAL LAW—DEFENSES—INSANITY—PRESUMPTION OF SANITY—SUFFICIENCY OF EVIDENCE.

Any evidence which tends to overthrow the presumption in a criminal case of the sanity of the defendant places the sanity of

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 33 *et seq.*
[2] 21 Am Jur 2d, Criminal Law § 29.
[3] 21 Am Jur 2d, Criminal Law § 52.
[4] 21 Am Jur 2d, Criminal Law § 53.

the defendant at issue, which requires a resolution by the jury and not the court.

Appeal from Oakland, William John Beer, J. Submitted Division 2 February 2, 1972, at Lansing. (Docket No. 11728.) Decided May 1, 1972.

Adoise White was convicted of murder in the first degree. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Frank R. Knox* and *William G. Wolfram,* Assistant Prosecuting Attorneys, for the people.

*Charles J. Porter,* for defendant on appeal.

Before: DANHOF, P. J., and T. M. BURNS and VAN VALKENBURG,* JJ.

PER CURIAM. Defendant appeals his conviction of murder in the first degree. MCLA 750.316; MSA 28.548.

Defendant was charged with the murder of Robert Green, the assistant manager of a Kroger store where the defendant was employed. At the trial defendant contended that he was not guilty by reason of insanity.

Defendant testified that he had been afflicted with epilepsy for a two-year period and that he had seizures one to three times a month. He also testified that he awakened at night with his hands around his wife's neck. Defendant's wife confirmed the incidents and testified that she would have to slap her husband to bring him to his senses. She

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

also testified that defendant would sometimes pass out and do things he could not remember.

Dr. Julius Taylor, a psychiatrist, testified that he had examined defendant in the Oakland County jail. Dr. Taylor testified that defendant had a complete lack of memory concerning the events, the result of which he was charged with murder; that defendant had a flattened emotional response; and, that defendant was an epileptic and not a psychotic.

Dr. Taylor then explained that there would be a lack of memory for the period of impairment. The psychiatrist stated that it was highly possible that on the date in question defendant suffered a psychomotor seizure during which he could have committed a very violent assault without knowing he was doing it. Dr. Taylor also stated that the seizure could last for a few minutes or a few hours.

At the conclusion of all the proofs, the trial court indicated that it would instruct the jury that there were three possible verdicts, *i.e.,* guilty of murder in the first degree, not guilty, and not guilty by reason of insanity. However, on the next day prior to closing arguments, the court ruled that the presumption of sanity had not been overcome and it would, therefore, instruct the jury on just the two possible verdicts of guilty or not guilty.

Defendant contends that it was error for the trial court to preclude the jury from finding him not guilty by reason of insanity. We will discuss the question in two parts: (1.) Is the medical disorder described by defendant's witness of the type which would, if established, render defendant legally insane? (2.) Was sufficient evidence introduced to allow the question of defendant's sanity to go to the jury?

Our definition of insanity comes from *People v*

*Durfee,* 62 Mich 487 (1886). Since that case, it has been the rule in Michigan that a person is insane if at the time the act was committed, a disease of the mind caused the defendant not to know right from wrong or, knowing right from wrong, could not resist the impulse to commit the act.

From Dr. Taylor's testimony, it is clear that if defendant was indeed suffering from the affliction described and, as a result, committed the act in question without knowing he was doing it, he would fit within the definition of insanity contained in *Durfee, supra.* Clearly, if defendant's condition prevented him from knowing what he was doing at the time he committed the act, it would also prevent him from knowing right from wrong. We therefore hold that if it was established that defendant was suffering from the condition described by Dr. Taylor at the time the stabbing occurred, then defendant was entitled to a verdict of not guilty by reason of insanity.

The only question left to decide then is whether there were sufficient proofs presented by defendant to rebut the presumption of sanity. The trial court held that the testimony on defendant's behalf was insufficient to rebut the presumption and, therefore, refused to instruct the jury that they could find defendant not guilty by reason of insanity.

Dr. Julius Taylor, who testified on defendant's behalf, arrived at his opinion after interviewing defendant at the county jail for one hour. He accepted everything defendant told him as true, ran no tests on him, nor did he inquire as to what medication defendant had been taking for his alleged condition.

Expert witnesses for the people who had examined and tested defendant stated that in their opinion the tests revealed that it would be impossi-

ble for defendant to have been suffering from an epileptic seizure at the time of the homicide.

While we must agree that the evidence presented by the people is much sounder since it was based on scientific data rather than merely statements made by defendants, the fact remains that the question of defendant's sanity was put in issue by the testimony of Dr. Taylor. It then became the responsibility of the jury, and not the court, to determine which of the expert witnesses to believe.

"This question of the burden of proof as to criminal intent was considered by this Court in the case of *Maher v The People,* 10 Mich 212, and a rule was there laid down which is entirely satisfactory to us, and which we have no disposition to qualify in any manner. Applying that rule to the present case, we think that the recorder did not err in refusing to charge that proof of sanity must be given by the prosecution as a part of their case. They are at liberty to rest upon the presumption of sanity until proof of the contrary condition is given by the defense. But when any evidence is given which tends to overthrow that presumption, the jury are to examine, weigh and pass upon it with the understanding that although the initiative in presenting the evidence is taken by the defense, the burden of proof upon this part of the case, as well as upon the other, is upon the prosecution to establish the conditions of guilt." *People v Garbutt,* 17 Mich 9, 22–23 (1868).

Therefore, since defendant had presented evidence to put his sanity in question, the issue was one for the jury to decide. It was, therefore, error for the trial court to refuse to give the requested instruction.

Reversed and remanded for a new trial.