## PEOPLE *v.* COLE.

### Opinion of the Court.

1. Jury—Examination of Jury.
   Examination of prospective jurors may be conducted by the court or the attorneys (GCR 1963, 511.3).

2. Same—Voir Dire Examination—Discretion of Court.
   Large discretion is vested in the trial court as to the scope of examination of jurors on their *voir dire*.

---

References for Points in Headnotes

[1] 31 Am Jur, Jury § 138.
[2] 31 Am Jur, Jury §§ 138, 139.
[3] 31 Am Jur, Jury § 136.
[4, 5] 31 Am Jur, Jury § 140.
[6] 21 Am Jur 2d, Criminal Law §§ 50, 52, 70.
[7] 21 Am Jur 2d, Criminal Law § 48.
　Validity and construction of statutes providing for psychiatric examination of accused to determine mental condition. 32 ALR2d 434.
[8] 21 Am Jur 2d, Criminal Law § 53.
[9] 21 Am Jur 2d, Criminal Law §§ 36, 38, 39.
[10] 4 Am Jur 2d, Appeal and Error § 165; 21 Am Jur 2d, Criminal Law § 66.
[11–16] 21 Am Jur 2d, Criminal Law § 45.

3. Same—Purpose of Voir Dire Examination.

Purpose of the *voir dire* examination is to enable the attorneys to elicit such information as to develop a rational basis for the exercise of challenges for cause or peremptory challenges.

4. Same—Trial Court—Appeal and Error.

Trial court's refusal to question prospective jurors in trial for second-degree murder as to what effect testimony concerning defendant's reputation would have on them *held*, not reversible error (CL 1948, § 750.317).

5. Same—Evidence—Prejudice.

Refusal by a court to ask what the jurors' verdict would be if the evidence was equally balanced is not error unless some prejudice is shown to have resulted.

6. Criminal Law—Presumption of Sanity—Burden of Proof.

Defendant in a criminal prosecution is presumptively sane until some contrary evidence is introduced to rebut this presumption, since sanity is the normal human condition, but when evidence is introduced which raises the issue of sanity, the burden of proof shifts to the prosecution to prove the defendant was sane beyond a reasonable doubt.

7. Same—Sanity—Expert Witnesses.

Expert witnesses are not required in order to prove sanity in a prosecution for crime, nor is it required that expert opinions must be rebutted by expert testimony.

8. Homicide—Sanity—Question for Jury.

Sanity of defendant in prosecution for murder *held*, a disputed fact question for the jury to decide.

9. Criminal Law—Insanity—Disease.

Defendant is of unsound mind, not criminally responsible, if, by reason of disease, he was not capable of knowing he was doing wrong in the particular act charged as crime, or if he did not have the power to resist the impulse to do the act by reason of disease or insanity.

10. Same—Insanity—Precedents.

Court of Appeals is not free to alter the long-approved test of criminal responsibility, where insanity is urged as a defense, by adopting a test used in other jurisdictions or one formerly used in this State.

11. HOMICIDE—INSANITY—INSTRUCTIONS—TRIAL COURT.

Trial court's refusal to inform the jury of the disposition of the defendant, charged with murder, if he was found not guilty by reason of insanity, *held*, not reversible error, since jury's duty is to determine the truth from the evidence presented, and post-verdict consequences should not enter into the jury's deliberations (CL 1948, § 766.15c).

12. CRIMINAL LAW—PUNISHMENT—FUNCTION OF JURY.

Jury's sole function in a prosecution for crime is to determine the truth, and consideration of the consequences of their verdict can only hamper and confuse their deliberations.

13. HOMICIDE—INSANITY—INSTRUCTIONS—ARGUMENT TO JURY.

Trial court's refusal either to instruct on the post-verdict disposition of defendant, if found not guilty by reason of insanity, or to allow counsel to state it in argument, *held*, not reversible error, since it could not have aided the jury in determining whether defendant was insane or not at the time the homicide charged was committed (CL 1948, §§ 750.317, 766.15c).

DISSENTING OPINION.

T. G. KAVANAGH, P. J.

14. HOMICIDE—INSANITY—STATUTES.

*Jury's question of defendant's disposition, if the verdict to charge of murder was not guilty by reason of insanity, should have been answered by quoting the statute applicable to that circumstance (CL 1948, §§ 750.317, 766.15c).*

15. CRIMINAL LAW—VERDICT—INSANITY.

*Verdict of not guilty by reason of insanity means neither freedom nor punishment, but it does mean that the accused will be confined in a hospital for the mentally ill until he has recovered his sanity and will not, in the reasonable future, be dangerous to himself or others (CL 1948, § 766.15c).*

16. HOMICIDE—INSANITY—INSTRUCTIONS—SECOND-DEGREE MURDER.

*Trial court's refusal to inform jury of disposition of defendant, charged with murder, if verdict was not guilty by reason of insanity, and acceptance of verdict of second-degree murder amounts to a miscarriage of justice (CL 1948, § 766.15c).*

Appeal from Genesee; Parker (Donn D.), J. Submitted Division 2 December 6, 1966, at Lansing.

(Docket No. 633.)     Decided November 27, 1967. Leave to appeal granted February 13, 1968.  See 380 Mich 757.

Johnnie L. Cole was convicted of murder in the second degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Edward G. Henneke,* Assistant Prosecuting Attorney, for the people.

*Milliken & Magee,* for defendant.

McGREGOR, J.  Johnnie L. Cole was tried and convicted of second-degree murder.  CL 1948 § 750-.317 (Stat Ann 1954 Rev § 28.549).  He was sentenced for 35 to 50 years and now appeals.

Factually, the case involves another senseless homicide.  Cole was awakened one morning and told that a man from the Consumers Power Company was shutting off the electric power to the Cole home.  Cole dressed, picked up his revolver, and went out to talk to the Consumers Power man. After a brief conversation, Cole raised his gun and shot the man several times.  Cole then went back into his house and either called the sheriff himself or had some one in his family make the call and reported the killing.  Sheriff's deputies who responded to the call testified that Cole was cooperative and related what had occurred in an even, unemotional manner.

Cole had no prior criminal record.  His standing in the community was very good and he was very active in church functions and religious fraternal organizations.  He did have a record of mental illness; he had been honorably discharged from the

armed services for psychiatric reasons and was receiving a veteran's administration disability pension. Cole underwent periodic psychiatric checkups in connection with his VA pension and had received such an examination 4 days prior to the shooting. The examining psychiatrist concluded that Cole was then in a state of moderate remission from his previous schizophrenic reactions but that he might act irrationally under stress. At trial, the defense produced two additional expert witnesses who testified that Cole had psychiatric disabilities. Cole's main defense was insanity. The testimony of the three expert witnesses raised the insanity question squarely for jury consideration.

Appellant Cole raises several questions on appeal. The first of these involves some 17 questions which defense counsel proposed for the *voir dire* examination. The court refused to propound 12 of these questions to the prospective jurors. By the provisions of GCR 1963, 511.3 the examination of prospective jurors may be conducted by the court or the attorneys. Further, a "large discretion is vested in the trial court as to the scope of examination of jurors on their *voir dire.*" *People* v. *Rose* (1934), 268 Mich 529, 531. The purpose of the *voir dire* examination is to enable the attorneys to elicit such information as to develop a rational basis for the exercise of challenges for cause or peremptory challenges. 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 465. The questions asked of the prospective jurors by the court enabled defense counsel to develop an adequate basis for the exercise of challenges.

Basically, the 17 questions submitted to the court by defense counsel were designed to derive four types of information from the prospective jurors. The most vital of these groupings was designed to elicit information as to whether any of the jurors

was predisposed against the defense of insanity and further, whether there was distrust of psychiatric testimony. The court, however, did question the jurors as to whether any of them had any bias against the defense of insanity. Another grouping of proposed questions sought to elicit what verdict they would return if there was any doubt as to Cole's sanity. This the jurors were asked by the court. Further, defense counsel sought to question the prospective jurors as to what effect testimony concerning Cole's reputation would have on them. The court's refusal to ask this question was not reversible error. Finally, counsel requested that the jurors be asked what their verdict would be if the evidence were equally balanced. Refusal by a court to ask this question is not error unless some prejudice is shown to have resulted. *People* v. *Lockhart* (1955), 342 Mich 595; *People* v. *Allen* (1958), 351 Mich 535. Cole has made no showing of prejudice. Further, the jurors were asked whether they would follow the usual presumptions, which presumptions would encompass the answer to the proposed question. We find no reversible error in the *voir dire* examination.

Counsel for appellant questions whether there was sufficient evidence before the jury to find the appellant guilty beyond a reasonable doubt. The main point of appellant's evidentiary argument seems to be that the people introduced no expert testimony to rebut the psychiatric testimony offered in Cole's defense. Since sanity is the normal human condition, a defendant is presumptively sane until some contrary evidence is introduced to rebut this presumption. When, however, evidence is introduced which raises the sanity issue, the burden of proof shifts to the prosecution to prove the defendant was sane beyond a reasonable doubt. *People* v. *Garbutt* (1868), 17 Mich 9. It does not

follow, however, that sanity must be proved by
expert witnesses or that expert opinions must be
rebutted by expert testimony.  See *Vial* v. *Vial*
(1963), 369 Mich 534, 536.  In the record before
us, there is testimony from which the jury could
find that the appellant was sane at the time the
homicide was committed.  This being the case, the
expert opinion evidence introduced by the defense
was not controlling.  *People* v. *Krugman* (1966),
377 Mich 559.  The question of Cole's sanity was
a disputed fact question for the jury to decide and
we cannot say their finding in this regard was
without factual support.

Defense counsel requested the trial court to
charge the jurors on the defense of insanity in
accord with the *Durham* rule (*Durham* v. *United
States* [CA DC, 1954], 94 App DC 228 [214 F2d
862, 45 ALR2d 1430]), whereby an accused is not
criminally responsible if his unlawful act is the
product of a mental disease or defect.  Whatever
may be the appeal of the *Durham* test of legal
insanity, we feel constrained to uphold the long-
settled Michigan tests.  The charge given the jury
was in accord with that approved in *People* v.
*Durfee* (1886), 62 Mich 487, 493:

"If, by reason of disease, the defendant was not
capable of knowing he was doing wrong in the
particular act, or if he had not the power to resist
the impulse to do the act by reason of disease or
insanity, that would be an unsound mind;"

thus, a mind not criminally responsible.  We may
speculate that the Supreme Court may some day
adopt the *Durham* rule or return to the "incapability
of criminal intent" test set out in *People* v. *Garbutt*
(1868), 17 Mich 9.  See *People* v. *Krugman* (1966),
377 Mich 559.  However, we are not free to act on

this speculation and alter the long approved *Durfee* test.

The final issue raised on appeal revolves around the question of whether the jury should have been informed of the disposition of the defendant if he was found not guilty by reason of insanity. The statute, CL 1948 § 766.15c (Stat Ann 1954 Rev § 28.933[3]),* provides in part:

"Any person, who is tried for the crime of murder and is acquitted by the court or jury by reason of insanity, shall forthwith be committed by order of said court to a State hospital for the criminally insane for the remainder of his natural life."

Defense counsel requested that he be allowed to state the law in his argument to the jury and further requested that the jury be instructed in accord with the provisions of the law. Both requests were denied. The jurors, after a period of deliberation, submitted a question to the court seeking instruction on the disposition of the defendant if found not guilty by reason of insanity. The court informed the jury that it could not answer the question.

We find no reversible error in this part of the case. Michigan is firmly committed to the position that the jury's duty is to determine the truth from the evidence presented and to communicate their determination to the court in the form of a verdict. Post-verdict consequences should not enter into the jurors' deliberations. *People* v. *Warner* (1939), 289 Mich 516. Jurors are not informed of the possible punishment that may be meted out by the court upon the return of a guilty verdict. The reason for this prohibition is that the jury's sole

---

* CL 1948, § 766.15c was repealed by PA 1966, No 266. For present relevant statutory provisions, see PA 1927, No 175, ch 7, §§ 27a, 27b, as added by PA 1966, No 266 (Stat Ann 1966 Current Material §§ 28.966[11], 28.966[12]).—REPORTER.

function is to determine the truth, and considera-
tion of the consequences of their verdict can only
hamper and confuse their deliberations. This
rationale applies with equal force to the present
case. Knowledge of the post-verdict disposition
of the defendant Cole, if found not guilty by reason
of insanity, could not have aided the jury in deter-
mining whether Cole was insane or not at the time
the homicide was committed. The court's refusal
either to instruct on this point or to allow counsel
to state it in argument was not reversible error.

Affirmed.

J. H. GILLIS, J., concurred with McGREGOR, J.

T. G. KAVANAGH, P. J. (*dissenting*). "Will a
verdict of not guilty by reason of insanity insure
the defendant of immediate release without further
treatment in an institution?" asked the jury.

"I am sorry, I cannot answer this question," re-
sponded the trial court.

For the reasons set forth in the opinions of the
United States Court of Appeals for the District of
Columbia in *Lyles* v. *United States* (1957), 103
App DC 22 (254 F2d 725) and *Catlin* v. *United
States* (1957), 102 App DC 127 (251 F2d 368), the
court should have answered the question by quoting
the statute applicable to that circumstance (CL
1948, § 766.15c [Stat Ann 1954 Rev § 28.933(3)]).

The case of *People* v. *Warner, supra,* cited in
the majority opinion correctly states the law as
to punishment for a crime, but that is not what
the jury asked.

Equating the provisions of the cited statute with
punishment is a totally repulsive concept. As said
by the supreme court of Nevada in *Kuk* v. *State*
(1964), 80 Nev 291, 300 (392 P2d 630, 634):

"A verdict of not guilty by reason of insanity means neither freedom nor punishment. It does mean that the accused will be confined in a hospital for the mentally ill until he has recovered his sanity and will not, in the reasonable future, be dangerous to himself or others."

My Brother's suggestion that "post-verdict consequences should not enter into the jurors' deliberations" expresses a lofty ideal to which we may all subscribe. It is ingenuous, however, to suppose that anticipated consequences do not enter jurors' deliberations and to base a rule of law on such supposition is dangerous.

To do a little evil to accomplish a great good is a temptation as old as Eve. To find an innocent person guilty to protect society, alas, may appear to some as a fair bargain, but it is the old temptation nonetheless.

Here the fear in the mind of the jury stands stark in its question. The virtue of its verdict could not have been assured without instruction in the law to allay that fear and to permit deliberation in confidence based on knowledge.

To refuse the requested information and to accept this verdict so tainted is a miscarriage of justice.

I would reverse and remand for a new trial.