PEOPLE *v.* HERRERA.

OPINION OF THE COURT.

1. HOMICIDE—CORPUS DELICTI—EVIDENCE.

Testimony as to unnatural cause of death by coroner who found a small wound in deceased's chest and by witnesses who described bleeding of deceased, statements made by him following his wounding, and actions taken by them to stop the bleeding *held,* sufficient to establish the *corpus delicti* of the crime of murder in the second degree (CL 1948, § 750.3[7]).

2. SAME—CORPUS DELICTI—EVIDENCE.

The *corpus delicti* of a homicide is sufficiently shown by testimony of the finding of the dead body and evidence of an unnatural cause of death.

3. CRIMINAL LAW—PRELIMINARY EXAMINATION—CORPUS DELICTI— PROBABLE CAUSE—EVIDENCE.

Evidence presented at a preliminary examination of a person charged with crime must be such as to permit the examining magistrate to find that a crime has been committed and that there is probable cause to believe the accused committed the crime in order to bind accused over for trial.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  40 Am Jur 2d, Homicide §§ 432, 433.
[3–5]  21 Am Jur 2d, Criminal Law § 449.
[6]  21 Am Jur 2d, Criminal Law § 328.
[7]  21 Am Jur 2d, Criminal Law §§ 333, 335, 337.
[8]  21 Am Jur 2d, Criminal Law §§ 333, 344.
[9–13]  40 Am Jur 2d, Hospitals and Asylums § 43.
[14–16]  29 Am Jur 2d, Evidence § 354; 31 Am Jur 2d, Expert and Opinion Evidence § 86.
[17, 18]  31 Am Jur 2d, Expert and Opinion Evidence §§ 54, 55.
[19–21]  31 Am Jur 2d, Expert and Opinion Evidence §§ 88, 92–94.
[22, 26]  53 Am Jur, Trial §§ 661, 662.
[23]  53 Am Jur, Trial §§ 796, 797, 802.
[24]  21 Am Jur 2d, Criminal Law § 328.
[25]  29 Am Jur 2d, Evidence § 354; 31 Am Jur 2d, Expert and Opinion Evidence §§ 54, 86.

4. SAME—PRELIMINARY EXAMINATION—EVIDENCE—LAY WITNESSES.

Testimony of a medical expert is preferable at preliminary examination where crime charged involves physical injury to a person, but laymen are not necessarily incapable of testifying competently as to observable surrounding circumstances of an incident, and an examining magistrate may form a belief based on lay testimony that such a crime has been committed.

5. SAME—EVIDENCE—PRELIMINARY EXAMINATION.

All facts and incidents which plainly relate to an offense are admissible in the preliminary examination of one charged with crime.

6. SAME—EVIDENCE—EXPERT WITNESS.

Denial of defense motion requesting names of the people's expert witnesses who would testify to rebut the defense of temporary insanity in trial of defendant for second degree murder of her husband was not an abuse of discretion of trial court or prejudicial to defendant where 2 police officers, who were not expert witnesses, and whose names appeared on the information, testified that defendant appeared sane at time she was being interrogated after her husband was stabbed (CL 1948, § 750.317).

7. SAME—WITNESSES—CROSS-EXAMINATION—CREDIBILITY.

Cross-examination of a witness is a matter of right when it relates either to facts in issue or relevant facts, and refusal to allow cross-examination of prosecution witness in trial for second-degree murder on issue of claimed insanity of defendant is error (CL 1948, § 750.317).

8. SAME—WITNESSES—CROSS-EXAMINATION—CREDIBILITY.

Denial of right to cross-examine a prosecution witness relative to facts and circumstances connected with defense of insanity in prosecution for second-degree murder is error but was rendered harmless where defendant subsequently examined the witness as her own relative to matters concerning which she was erroneously denied the right to cross-examine (CL 1948, § 750.317).

9. EVIDENCE—HOSPITAL RECORDS—ADMISSIBILITY.

Data obtained in regular course of medical practice and entered in hospital records are regularly relied upon by medical profession in matters no less important than those involved in lawsuits, and their exclusion in court leads to error rather than to truth (CLS 1961, § 600.2146).

10. SAME—HOSPITAL RECORDS—ADMISSIBILITY.

> Hospital records are admissible to show facts relating to medical treatment and history of patients in criminal as well as in civil cases, where physical condition of the patient, one accused of crime, is in issue (CL 1948, § 750.317).

11. SAME—HOSPITAL RECORDS—REGULAR COURSE OF BUSINESS.

> Hospital records made in writing and in the regular course of business are admissible in evidence, as to acts, events, occurrences or transactions incident to hospital care or treatment, when it was the regular course of business to make the record (CL 1948, § 750.317).

12. SAME—HOSPITAL RECORDS—DIAGNOSIS—ADMISSIBILITY—CRIMINAL LAW.

> A diagnosis contained in a hospital record is not admissible in a criminal case where the diagnostician is unavailable for cross-examination; the admission of an unsupported diagnosis would not be in keeping with criminal trial procedures.

13. CRIMINAL LAW—EVIDENCE—HOSPITAL RECORDS.

> Refusal of trial court in trial for second-degree murder to admit into evidence hospital records as to the admission of defendant to hospital, her apparent physical condition, and her consumption of an unknown amount of phenobarbital was error where defense of temporary insanity was raised, but did not prejudice defendant where doctor who treated defendant on her readmission to hospital 2 days later testified later in the trial as to her condition (CL 1948, § 750.317).

14. SAME—EVIDENCE—TREATING PSYCHIATRIST—OPINION—PERSONAL HISTORY.

> A psychiatrist may give testimony of his opinion of criminal defendant's sanity partially based upon a personal history given to him by defendant if he is the treating psychiatrist.

15. EVIDENCE—PSYCHIATRIST—DIAGNOSIS—PATIENT'S PERSONAL HISTORY.

> A psychiatrist in making a diagnosis must use a patient's verbal description of his life and medical history, and objection that patient going to doctor after being charged with crime will make self-serving statements can be overcome by reliance upon the psychiatrist's expertise, experience, and ability to detect liars.

16. CRIMINAL LAW—PSYCHIATRIC EXAMINATION—HISTORY OF PATIENT.

Trial court's refusal to permit psychiatrist to testify to history given him by defendant when he examined her after she stabbed her husband and refusal to permit him to present his diagnosis of defendant which was based upon her medical history and his examination of her denied the psychiatrist a vital tool essential to a proper diagnosis of his patient's mental condition and was error but not prejudicial to defendant's right to a fair trial where doctor was permitted to form an opinion that she was mentally ill on the date she stabbed her husband to death based upon hypothetical question composed of facts already elicited from other witnesses.

17. EVIDENCE—OPINIONS—EXPERT WITNESS—HYPOTHETICAL FORM OF QUESTION.

Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge, in his discretion, so requires (CGR 1963, 605).

18. CRIMINAL LAW—HYPOTHETICAL QUESTION—DISCRETION OF COURT.

Trial court *held*, not to have abused its discretion in requiring the use of a hypothetical question in examining psychiatrist who examined defendant after she stabbed her husband and formed opinion as to her mental state at the time of the offense.

19. EVIDENCE—MENTAL CONDITION—NONEXPERT WITNESS.

A nonexpert witness who has had ample means to observe and form conclusions as to the mental condition of a person and who testifies to pertinent facts on which his conclusions are based may state his conclusions as to the insanity of a person.

20. CRIMINAL LAW—NONEXPERT WITNESS—OPINION AS TO DEFENDANT'S SANITY.

Admission of testimony of 2 police officers as to their opinion of defendant's sanity where one arrested defendant and brought her to police station where the second joined in questioning defendant, may be an abuse of discretion by court if there was not ample opportunity for the witnesses to form an opinion.

21. SAME—NONEXPERT WITNESS—OPINION AS TO SANITY.

Admission of testimony of 2 police officers who talked to defendant for 1 hour and 10 minutes, that she appeared sane to them at the time she was interrogated shortly after she stabbed her husband *held*, not an abuse of discretion where court first determined that there was ample opportunity for witnesses to form opinions of defendant's sanity.

22. HOMICIDE—INSANITY—INSTRUCTIONS.

Trial court's refusal to instruct on the post-verdict disposition
of defendant, charged with second-degree murder, if found
not guilty by reason of insanity, *held,* not error (CL 1948,
§§ 750.317, 766.15c).

23. CRIMINAL LAW—LESSER DEGREE OF OFFENSE—INSTRUCTION.

A court must charge in relation to lesser degrees of an offense
where there is evidence which would tend to support convic-
tion of a lesser degree (CL 1948, § 768.32).

DISSENTING OPINION.

T. G. KAVANAGH, P. J.

24. HOMICIDE—INSANITY—DISCLOSURE OF WITNESSES.

*Trial court's denial of defense motion for disclosure of witnesses*
*to be called by State on question of sanity of defendant*
*charged with second-degree murder prevented the defense from*
*properly preparing cross-examination and was prejudicial*
*error (CL 1948, § 750.317).*

25. CRIMINAL LAW—PSYCHIATRIST—OPINION—INSANITY—HYPOTHET-
ICAL QUESTION.

*Permitting defense psychiatrist to testify to his opinion of*
*defendant's sanity did not cure the error of limiting his*
*examination to a hypothetical question.*

26. HOMICIDE—MURDER—NOT GUILTY BY REASON OF INSANITY—IN-
STRUCTIONS.

*A defendant who pleads not guilty to charge of second-degree*
*murder by reason of insanity is entitled to have instruction*
*given on a statute providing that any person tried for murder*
*and acquitted by reason of insanity shall be committed to*
*State hospital for the criminally insane (CL 1948, § 766.15c).*

Appeal from Saginaw, Borchard (Fred J.), J.
Submitted November 7, 1967, at Lansing. (Docket
No. 2, 848.) Decided June 26, 1968. Leave to appeal
granted September 30, 1968. See 381 Mich 777.

Lupe Ruth Herrera was convicted of manslaugh-
ter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert B. Currie,* Prosecuting Attorney, and *Gerald K. Dent,* Assistant Prosecuting Attorney, for the people.

*Vincent A. Scorsone,* for defendant.

FITZGERALD, J.  Defendant was convicted by a jury in the Saginaw county circuit court of the manslaughter[1] of her husband in the Wonder Bar in the city of Saginaw on the night of July 13, 1963.  She appeals.  The facts relevant to the case will be outlined within the framework of our discussion of the several issues of error alleged by defendant to have occurred during the course of her trial.

A preliminary hearing was held pursuant to CL 1948, § 766.4 (Stat Ann 1954 Rev § 28.922).  Defendant alleges that error occurred at this time when the people did not produce testimony of a medical expert as to an unnatural cause of the husband's death, resulting in a failure to establish the *corpus delicti* of the offense of murder in the second degree.[2]  A medical pathologist had performed an autopsy but he was not called to testify.  The death certificate was introduced pursuant to CL 1948, § 326.6, as amended by PA 1962, No 202 (Stat Ann 1965 Cum Supp § 14.226), to show the identity, occurrence, time and death, but not the cause of death, although an opinion as to the cause is included.  More testimony was adduced.  The nonmedical coroner was called and he described a small wound found in the husband's chest.  Several witnesses were called and they gave testimony concerning profuse bleeding of deceased, statements made by deceased following his wounding, and actions taken by

---

[1] CL 1948, § 750.321 (Stat Ann 1954 Rev § 28.553).
[2] CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).

one of them to stop the bleeding. In the case of *People* v. *Jackson* (1965), 1 Mich App 207, 211, it is stated:

"In homicide cases the *corpus delicti* is sufficiently shown by testimony of the finding of the dead body and evidence of an unnatural cause of death."

A preliminary hearing is held to establish to the satisfaction of the examining magistrate that a crime has been committed and that there is probable cause to believe that the accused committed the crime. *People* v. *Jackson, supra.*

The testimony of a medical expert is indeed preferable in a situation where the crime charged involved physical injury, but we do not find that error existed in this preliminary hearing when there is other competent and substantial evidence of an unnatural cause of death or injury. Laymen are not necessarily incapable of testifying competently as to observable surrounding circumstances of an incident so that the examining magistrate would err in believing that a crime had been committed based on their testimony. All facts and incidents which plainly relate to the offense are admissible. See 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 303, p 361.

Defendant's counsel requested the names of the people's expert witnesses who would testify to rebut the defense of temporary insanity, but his motion was denied by the trial court. Two police officers did testify that defendant appeared sane to them at the time she was being interrogated shortly after her husband was stabbed, and their names appeared on the information. They were not expert witnesses and the trial court did not abuse its discretion nor prejudice defendant by denying the motion.

Rosia Flores, the sister of defendant, was at the Wonder Bar when deceased was injured. She was

indorsed on the information by the prosecutor and she testified on direct examination, but the trial court refused to permit defendant's counsel to cross-examine her on the issue of the alleged insanity of defendant. This refusal constitutes error as the right to cross-examine as to facts in issue or relevant facts is broadly granted in Michigan subject generally to the discretion of the trial court as to the credibility of the witness. *Schwartz* v. *Triff* (1966), 2 Mich App 379. However, the people allege that this error is not prejudicial to defendant as she later called Rosia Flores as her own witness and substantial testimony was given on the issue of insanity at that time. We agree with the observation made at 3 Am Jur, Appeal and Error, § 1132, p 651:

"And where a party has been denied by the trial court the right to cross-examine a witness relative to facts and circumstances connected with the matters brought out on the direct examination, the error may be rendered harmless if such party examines the witness during the subsequent progress of the cause relative to the matters concerning which he was erroneously denied the right to cross-examine."

Defendant was fully given the opportunity to develop the testimony of Mrs. Flores concerning the issue of insanity and we hold this error of the trial court to be nonprejudicial to defendant. See *Harrington* v. *Los Angeles R. Company* (1903), 140 Cal 514 (74 p 15, 63 LRA 238).

Defendant attempted to offer into evidence 2 exhibits of emergency room records of St. Mary's Hospital to show her alleged insanity; these records described her admission to the hospital on 2 occasions, 4 months prior to the death of her husband, because of her consumption of an unknown amount of phenobarbital, with a contemporaneous diagnosis of her condition. The court refused to admit these

exhibits at any time for any purpose during the course of the trial, being of the opinion that such records are not admissible to prove diagnosis or history of the case.

The people cite the case of *People* v. *Lewis* (1940), 294 Mich 684, for the proposition that hospital records are never admissible under the business entry statute, CLS 1961, § 600.2146 (Stat Ann 1962 Rev § 27A.2146), in a criminal case, because the accused will be denied his constitutional right to be confronted by the witnesses against him, *i.e.,* the maker of the hospital record who is not present in the courtroom. However, we believe that the desire to obtain the best evidence possible concerning the accused's plea of insanity would require that she be able to introduce a portion of such hospital records following the preparation of a proper foundation. We agree with the statement in Weihofen, Mental Disorder as a Criminal Defense, ch 6, § 3, p 327:

"Data obtained in the regular course of medical practice and entered on such (hospital) records are regularly relied upon by the medical profession in matters no less important than those involved in lawsuits, and their exclusion in court leads to error rather than to truth."

We believe that the limitations of the *Lewis Case* were intended to apply to the particular facts of that case wherein the defendant was accused of practicing medicine without a license in an abortion case, where the hospital records showed that the complaining witness was previously treated in connection with a pregnancy. In cases such as the present, concerning physical condition, hospital records are generally held to be admissible to show facts relating to the medical treatment and history

of patients in criminal as well as in civil cases. See 23 CJS, Criminal Law, § 851, p 332.

The objection of the people is that they "can't cross-examine the record", but this is not the reason given by the Court in the *Lewis Case* for excluding such evidence. Rather, the objection is that the accused is unable to confront the witnesses against him when such records are admitted, so this objection must be qualified where the accused himself seeks to admit the records as an essential part of a defense of insanity. A number of safeguards have evolved to remove the hearsay objection by insuring the regularity of the entries made in the ordinary course of business by persons whose duty it is to make them, the records being duly authenticated and having been made by a person having knowledge of the facts set forth therein. The Michigan business entries statute, *supra*, is interpreted as follows:

"Under the statute authorizing the admission of records made in regular course of business, a hospital record made in writing and in the regular course of business is admissible in evidence, as regards acts, events, occurrences or transactions incident to the hospital care or treatment, when it was the regular course of business to make such record." 5 Callaghan, Michigan Pleading and Practice (2d ed), § 36.572, p 216.

Defendant would have this Court extend the statute to include a diagnosis contained in the hospital record as admissible in evidence. See *Shinabarger v. Phillips* (1963), 370 Mich 135. We do not support this contention in a criminal case such as the present one. The diagnostician is unavailable for cross-examination and we believe that the admission of his unsupported diagnosis would not be in keeping with sound criminal trial procedures. Two exhibits were refused admission by the trial judge. We find

error in his refusal to admit exhibit #11 concerning her admission to the hospital on March 10, 1963, her apparent physical condition, and her consumption of an unknown amount of phenobarbital, but not as to the diagnosis made at that time. The doctor who treated defendant on her re-admission 2 days later testified at the trial, referring to the hospital record (exhibit #12) made at that time. We find that defendant suffered no prejudice by the initial exclusion of exhibit #12 as the diagnostician fully testified as to her condition later in the trial.

Defendant called a psychiatrist to testify on the issue of her insanity. She alleges error in that the trial court did not permit the psychiatrist to testify as to the history given him by defendant when he examined her; that he was not allowed to give his opinion as to defendant's mental state at the time of the alleged offense unless counsel framed his inquiries in the form of hypothetical questions; and that the psychiatrist was not allowed to present his diagnosis of defendant which was based upon her medical history and his examination of her.

The parties agree that a psychiatrist may testify as to his opinion partially based upon a personal history of the patient given to him if he is the "treating" psychiatrist. However, the people allege that this psychiatrist was consulted for the purpose of trial preparation on behalf of defendant and that the history would be self-serving and hearsay, and, thus, that it should be excluded. Defendant denies that the psychiatrist was consulted only for trial preparation, and alleges that he did treat defendant, but if it is found that the contention of the people is true, asks this Court find the history essential to any evaluation of a patient by a psychiatrist.

Four general situations may occur when medical testimony is sought to be introduced into evidence

on the issue of an opinion formed by the doctor based on a history obtained from the patient.

1. The "treating" physician or psychiatrist: may testify as to personal history given by the patient.

2. The "nontreating" physician: may not testify in Michigan (*Layton* v. *Cregan & Mallory Company, Inc.,* (1934), 269 Mich 574). The fear persists that the patient who is sent to a doctor following an incident will readily make self-serving statements. The modern trend in the United States is to allow the nontreating doctor to consider these statements in order that he may have the opportunity to form an intelligent opinion on the basis of as much information as is available. Reliance is placed on his ability to detect malingering. See 6 Am Jur, Trials, § 17, p 137.

3. The "referral and treating" physician and psychiatrist: may testify as to the personal history given by the patient to him as a treating doctor if this is one purpose of the visit. This trend is exemplified by the case of *Ritter* v. *Coca Cola Company* (1964), 24 Wis 2d 157 (128 NW2d 439).

4. The "nontreating psychiatrist": may testify as to history in those states which make an exception to the exclusionary rule because of the unique problems faced by the psychiatrist in making subjective observations predicated on a full understanding of a patient's life. 6 Am Jur Trials, § 19, p 140.

Defendant first urges us to find that the psychiatrist would fall under (3) above because, following the birth of another child in August, 1964, the psychiatrist recommended that she be sterilized to prevent further pregnancy, based on his opinion of her mental condition prior to that time. However, the issue of permitting him to testify as to the history given to him by defendant was objected to and ruled on by the trial court long before testimony was in-

troduced concerning possible "treatment" by the psychiatrist.

Due to the subjective nature of a psychiatrist's diagnosis, we agree that it is essential for him to employ the tool of the patient's verbal description of her life and mental history, as in (4) above. The "self-serving" objection to the history can be overcome by reliance upon the psychiatrist's expertise, experience, and ability in detecting liars. The trial court repeatedly refused to permit the psychiatrist to testify as to his diagnosis of defendant's condition on July 13 because of the probability, as alleged by the people in reliance on an 1888 New York case, that the statements were self-serving when they were made to a physician months after the incident by a person claiming insanity at the time of the incident. *People* v. *Hawkins* (1888), 109 NY 408 (17 NE 371).

It is highly unlikely that a defendant will always consult a psychiatrist before committing an act under an irresistible impulse and it is not reasonable to restrict subsequent psychiatric diagnosis by barring an essential history because of a lack of foresight by a person who would be required to see a psychiatrist before being seized by such an impulse. The Hawkins concept is not acceptable in the light of modern psychiatric techniques. The psychiatrist did testify that in November, 1963, when he first examined defendant, he found her to be schizophrenic with paranoid features. The frustration faced by the psychiatrist in attempting to arrive at a diagnosis without being permitted to consider the history of the patient is apparent throughout the record of this trial. He has been denied a vital psychiatric tool essential to a proper diagnosis of his patient's mental condition. We believe that to deny counsel the opportunity to prepare a founda-

tion for a diagnosis by a psychiatrist by omitting any statement made to the psychiatrist by the patient is error. However, in the present case, we do not believe this particular error to be prejudicial to defendant's right to a fair trial as the doctor was permitted in the presence of the jury to form an opinion based upon a hypothetical question composed of facts already elicited from other witnesses:

"*Q.* Now, assuming those facts only, do you have an opinion—do you have an opinion as to her mental condition on July 13, 1963?  *  *  *

"*A.* Yes, I'd have an opinion.

"*Q.* What is that opinion, doctor?

"*A.* That she was mentally ill. I would not have a specific opinion regarding the absolute diagnosis, but that would be adequate evidence in my opinion that she would be mentally ill and severely so.

"*Q.* And would that condition bring about the acts that she's accused of having performed?  *  *  *

"*A.* I would like to say that the severity of the illness would make the alleged act a compatible product of it."

We do not find that prejudice resulted to defendant on the issue, considering the present state of Michigan law.

We have seen that the trial court did not permit the psychiatrist to give his opinion as to defendant's sanity as of July 13, 1963, unless counsel used a hypothetical question, including only the facts which had been presented to the court and facts which were before the jury at that particular time. GCR 1963, 605, substantially limits the former rule that the nontreating physician is permitted only to answer a "hypothetical question". Such questions are asked in order to limit the testimony of an expert who is testifying, and giving his opinion based on facts related to him by others. GCR 1963,

605 is expressly intended to make better use of the testimony of an expert and not to bind him to an opinion of a single question composed of the facts already introduced into evidence by others. It remains within the discretion of the trial judge to use the hypothetical question to assist the court or jury in understanding the expert opinions.

Careful perusal and examination of the record does not show an abuse of discretion by the trial judge in requiring counsel to employ the hypothetical question. Again, we find error in the trial court's refusal to permit the psychiatrist to discuss the history given to him by the patient, but we do not find it prejudicial for the psychiatrist did answer the hypothetical question as to defendant's mental condition on July 13, 1963, by stating that in his opinion she was mentally ill, without consideration of the interview that he had with her.

The people called 2 police officers as their only witnesses on rebuttal. One police officer arrested the defendant and brought her to the police station and the other joined with the first in questioning the defendant. The officers were called for the purpose of rebutting defendant's testimony as to her insanity and to give their observations of defendant. The trial court permitted these policemen to testify over the repeated objections of defendant's counsel who alleged that they only had a conversation with her for one hour and 10 minutes at a time when she was under arrest, handcuffed, disheveled, wet, and informed that her husband was dead. We are concerned with the admissibility of nonexpert opinion testimony.

The fundamental rule in the State of Michigan was first stated in the civil case of *Beaubien* v. *Cicotte* (1864), 12 Mich 459, 503, as follows:

"But, from the nature of things, no rule can be laid down declaring what amount of acquaintance, or what opportunities are necessary to enable an observer to be a witness. There are cases of insanity open to the slightest scrutiny while others defy the keenest search. But no testimony can be of any real value, unless it appears the witness had adequate means and opportunities for forming some conclusion."

This principle was restated in the criminal case of *People* v. *Zabijak* (1938), 285 Mich 164, 185, wherein the Court states:

"A nonexpert witness who has had ample means to observe and form conclusions as to the mental condition of a person and who testifies to pertinent facts on which his conclusions are based may state his conclusions as to the insanity of a person."

The *Zabijak* decision has been interpreted once by an equally divided Michigan Supreme Court in the case of *People* v. *Hannum* (1961), 362 Mich 660. The Court held that lay testimony which constituted opinion evidence as to the sanity of the defendant presented a question for the jury but reversal was not had on this ground. Four justices concurred in the reversal, but they found that prejudicial error was also committed by the trial court in admitting the opinion testimony of the 3 nonexpert witnesses. In the *Hannum Case,* the trial court admitted the opinion testimony of the policemen over defendant's objection because, in its view, the question of limited opportunities for observation of defendant by the witnesses went only to the weight to be given by the jury to the opinion testimony, and not to its admissibility. The trial court did the same in the present case in permitting the officers to testify, when in particular one officer could not answer counsel's question, "Would you say that a normal person who had

been told her husband was dead would be cool, calm and collected?" Defendant's counsel immediately objected, but the court overruled him, saying, "The weight of his [the witness'] opinion would be taken into consideration by the jury." The 4 justices who did not reverse on this ground in the *Hannum Case* agreed with the statement in the case of *People* v. *Borgetto* (1894), 99 Mich 336, 341, to wit:

"But there is a difference in the nature of the testimony requisite as bases for opinions in the two cases of sanity and insanity. The former is the normal condition; the latter, the abnormal. The latter is based upon unnatural conduct; the former may safely rest upon the absence of unnatural action or language. Once it is shown that the witness has a sufficient acquaintance under circumstances that give a reasonable opportunity for judging, and the testimony that he saw nothing unusual or abnormal is competent. What is required to show a sufficient opportunity depends upon circumstances which may properly move the judicial discretion, the testimony being more or less valuable as the circumstances are convincing."

In order to determine whether the trial court abused its discretion in permitting the police officers to testify, we must determine whether there was sufficient basis for the court to determine that ample opportunity existed for the witnesses to form an opinion.

The time necessary to obtain enough facts for a reasonable opinion will vary according to the circumstances. A proper foundation was prepared when the police officers testified as to their experience with insane persons, the initial contact with defendant at the Wonder Bar, subsequent conversations with defendant, her appearance, her comments, and her emotional reaction to the news of her husband's death. The trial court then deter-

mined that there was ample opportunity to form an opinion and permitted the officer to testify, noting that the jury could determine and weigh the validity of his opinion that the defendant appeared sane. We find no abuse of discretion by the court in finding ample opportunity for observation.

Defendant requested the trial court to instruct the jury that if they were to find her not guilty by reason of insanity, she would be confined in the State hospital for the insane, the request being denied. The Michigan statute required mandatory commitment upon a finding of insanity, at the time of this trial, and was found at CL 1948, § 766.15c (Stat Ann 1954 Rev § 28.933[3]), subsequently repealed by PA 1966, No 266.

Defendant argues that the *"Lyles* instruction" should have been given, this instruction being derived from the case of *Lyles* v. *United States* (1957), 103 App DC 22 (254 F2d 725), wherein an instruction was approved and *required,* unless the defendant does not want it, in the courts of the District of Columbia to the effect that if a defendant is found not guilty by reason of insanity, he will be committed to a mental hospital. The reasoning given is that a jury, although aware of what the results of a guilty or not guilty decision will be, does not know what will happen to a defendant if the verdict is not guilty by reason of insanity. We agree with the opinion of the Supreme Court of the State of Vermont in the case of *State* v. *Hood* (1963), 123 Vt 273 (187 A2d 499, 11 ALR3d 732), that jurors are not this ill-informed and that the *Lyles* decision is certainly not binding on this Court. We do not require that such an instruction be given, and we do not find that the trial court has erred in refusing this request. See *People* v. *Cole* (1967), 8 Mich App 250.

Defendant also requested the trial court to make a charge based only upon second degree murder as that was the same charge as was set forth in the warrant and in the information, said request being refused, and the lesser offense of manslaughter also being included in the charge along with second degree murder. Defendant argues that if an accused is faced with the open charge of common law murder, the trial court may include all offenses thereunder, but where a specific charge of first- or second-degree murder is made, the court need not instruct the jury on the lesser offenses and, when the defendant objects to such lesser charge instructions, the court should respect his request.

We refer to CL 1948, § 768.32 (Stat Ann 1954 Rev § 28.1055):

"Upon an indictment for any offense, consisting of different degrees, as prescribed in this chapter, the jury may find the accused not guilty of the offense in the degree charged in the indictment and may find such accused person guilty of any degree of such offense, inferior to that charged in the indictment, or of an attempt to commit such offense."

We do not find error in the trial court's refusal to omit a charge as to manslaughter. As is stated in 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 674, p 865:

"Where there is testimony under which the defendant may be convicted of an offense of a lesser degree than the principal offense, it is not error for the court to refuse to charge that the jurors must confine their deliberations to the principal charge and cannot convict the respondent of a lesser offense, but, where there is some evidence upon which a respondent may be convicted of a lesser offense, it is error for the court to limit the verdict to the greater offense."

Were the trial court to have accepted defendant's request and omitted the charge as to manslaughter, we may well have been forced to disagree with him and find that he had erred. See *People* v. *Hamilton* (1889), 76 Mich 212; *People* v. *Milhem* (1957), 350 Mich 497. The court must charge in relation to lesser degrees of an offense where there is evidence which would tend to support conviction of a lesser degree. We find evidence of manslaughter and do not hold that the trial court erred in requiring the jury to consider manslaughter.

We affirm the propriety of the conviction of Lupe Ruth Herrera. Although several errors have been noted, we do not find any of them to be of sufficient prejudice to Mrs. Herrera's right to a fair trial to require a reversal. Her rights to a fair trial were carefully protected by the trial judge, her defense of temporary insanity was presented for the jury's consideration by several witnesses, and the evidence supported the verdict of the jury. The trial court was required to make numerous rulings, and did so, based on existing Michigan law, and we do not find that defendant suffered prejudice where error existed. This trial was fair. It need not be perfect.

Affirmed.

McGREGOR, J., concurred with FITZGERALD, J.

T. G. KAVANAGH, P. J., (*dissenting*). In addition to the 3 areas of error indicated in my brothers' opinion, I find 2 more.

1. Denial of defendant's motion for the disclosure of the rebuttal witness.

2. Limiting the requested *Lyles* instruction. [*Lyles* v. *United States* (1957), 103 App DC 22 (254 F2d 725).]

I cannot subscribe to the evaluation of the 3 errors listed in the majority opinion as "harmless" any more than I could so characterize the 2 indicated above or the sum of them as "non prejudicial."

I do not think the defendant had a fair trial. I will not comment further on the errors described in my brothers' opinion beyond saying that I agree they were errors.

The court's denial of the defense motion for the disclosure of the witness to be called by the state on the question of sanity in my view prevented the defense from properly preparing cross-examination and accordingly was prejudicial error.

I do not share the conviction that permitting the defense psychiatrist to testify as to his opinion of defendant's sanity cured the error of limiting his examination on that subject to a hypothetical question. The whole purpose of GCR 1963, 605 is subverted by this device, in my opinion.

But the most glaring error which I perceive is the court's refusal to give the *Lyles* instruction.

In *People* v. *Cole* (1967), 8 Mich App 250 the trial court refused (as here) to instruct on the effect of CL 1948, § 766.15c (Stat Ann 1954 Rev § 28.933 [3]),* refused to allow defense counsel to state the law in his argument, and refused to answer a direct inquiry on this point by the jury during its deliberations. A majority of our Court's panel in that case approved. I disagreed there. I disagree here.

I believe a defendant who pleads not guilty by reason of insanity is entitled to have the requested instruction on the statute given to the jury so that the jury will not be moved by fear based on its ignorance of the law, which fear seemed so obvious

---

* Repealed by PA 1966, No 266, effective March 10, 1967. For current provisions see PA 1927, No 175, ch 7, §§ 27a, 27b, as added by PA 1966, No 266 (MCLA §§ 767.27a, 767.27b, Stat Ann 1968 Cum Supp §§ 28.966[11], 28.966[12]).

to me in *Cole*. In *Cole* we could see the flower. Here we can see the root. Our task, as I perceive it, is to extirpate the noxious weed of ignorance however it appear.

I would reverse and remand for a new trial.