## PEOPLE v LINDSEY

1. WITNESSES—CRIMINAL LAW—ASSAULT—SCOPE OF CROSS-EXAMINA-
   TION—RELEVANCY.

   Questioning of an assault victim, upon cross-examination, about a
   purported sale of marijuana was irrelevant in a trial for assault
   with intent to commit armed robbery, and was therefore prop-
   erly excluded where the victim of the assault concededly had
   nothing to do with the sale.

2. APPEAL AND ERROR—SCOPE OF CROSS-EXAMINATION—COLLATERAL
   MATTERS—JUDICIAL DISCRETION.

   The discretion of the trial court in allowing cross-examination of
   witnesses on collateral matters is not subject to review unless
   shown to have been grossly and oppressively abused.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OF-
   FENSES—AFFIRMATIVE EXCLUSION OF CONSIDERATION.

   Failure of a trial court to instruct the jury on a lesser included
   offense where an instruction has not been requested, is not an
   affirmative exclusion of consideration of lesser included of-
   fenses; the exclusion is by implication only and is not reversible
   error.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—RECOMMENDATION OF
   CLEMENCY—DUTY OF JURY—OBLIGATION OF COURT—INFLUENCE
   ON JURY.

   A trial court's explanation, in answer to a question from the jury,
   that the jury could recommend clemency but that the court
   was under no obligation to follow the jury's recommendation,
   did not constitute reversible error even though the court did
   not state that the jury should make its determination of guilt
   or innocence solely upon the evidence without consideration of
   mercy where the jury did not appear deadlocked and in a
   position to be strongly influenced by the court and the remarks

REFERENCES FOR POINTS IN HEADNOTES

[1] 6 Am Jur 2d, Assault and Battery § 208.
[2] 5 Am Jur 2d, Appeal and Error § 884.
[3, 4] 53 Am Jur, Trial §§ 796–802.
[5] 20 Am Jur 2d, Courts § 19.

of the court clearly removed from the jury any thought that its recommendation would influence the court.

5. COURTS—JURISDICTION—CRIMINAL LAW—DISTRICT COURT—CONSTI-
TUTIONAL LAW—DE FACTO MAGISTRATE.
    The district court has jurisdiction to hold a preliminary examina-
    tion in a criminal case; even assuming *arguendo* that a viola-
    tion of the Michigan Constitution exists in the legislative grant
    of such jurisdiction to the district court, the action of the
    district court in holding the examination and binding the
    defendant for trial is valid and binding as an action of a de
    facto magistrate.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 October 10, 1974, at Grand Rapids. (Docket No. 18670.) Decided November 7, 1974.

Teddy L. Lindsey was convicted of assault with intent to commit armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*Murphy, Neff & Burns,* for defendant on appeal.

Before: ALLEN, P. J., and J. H. GILLIS and Mc-
GREGOR, JJ.

ALLEN, J. Defendant appeals as a matter of right his conviction by jury July 31, 1973, of the crime of assault with intent to commit armed robbery. MCLA 750.89; MSA 28.284. He was sentenced to imprisonment for a term of 5 to 15 years.

On the night of May 4, 1973, Belton Shumpert was visiting a friend, Louis Burrell, in a house in Grand Rapids. With them was one Margaret Noel. About 1 a.m. Shumpert went downstairs to answer

a knock heard at the front door. Upon opening the door, defendant entered with a shotgun and demanded money of Shumpert. Shumpert replied he had no money, whereupon defendant forced Shumpert to empty his pockets. Defendant then demanded Shumpert call Burrell who came downstairs but upon seeing defendant with the gun ran back to his bedroom, secured a pistol and called to defendant that the police were coming. Defendant then left the house. Meanwhile, Shumpert had found refuge in the basement.

At trial, defendant admitted he came to the house that night for the purpose of either picking up a packet of marijuana for which he had paid $15 or, alternately, collecting his money. He claimed that earlier he had given the money to one Mike Gibbs who also lived in the house but was not present that night. He denied he had a gun, explaining that he carried a "wabby gang"—a sort of stick with a long black handle which could look like a gun barrel. He denied telling Shumpert to empty his pockets. On cross-examination, defendant admitted he had served about 5 years in Jackson Prison for breaking and entering and also had been arrested and convicted for felonious assault.

On appeal to this Court, defendant claims errors (1) during trial when the trial judge limited defense counsel's cross-examination, (2) in the failure to instruct the jury on the alleged lesser included offense of attempted armed robbery even though defense counsel had not requested such charge, (3) following trial when the trial judge responded affirmatively to the jury's question of whether they could return a verdict with a recommendation of clemency, and (4) prior to trial because of the lack of jurisdiction of a district court to conduct preliminary examinations.

We do not agree that the trial court improperly restricted defense counsel's scope of cross-examination. For the most part, the objectional questions asked of Shumpert and Burrell were whether dope was dispensed at the house, whether anyone was smoking marijuana or whether the witness used marijuana. Defendant's theory of defense was that he had given $15 to one Mike Gibbs for which he was to receive marijuana and that when Gibbs did not deliver the packet to him earlier that evening, defendant went to the house for the purpose of obtaining either his money or the merchandise. Citing *People v Henry,* 202 Mich 450; 168 NW 534 (1918), counsel claims such a belief would negate the intent to rob and, accordingly, it was error to exclude the questioning. The questioning would be proper if the offense charged had been an offense against Gibbs or possibly Burrell rather than against Shumpert who concededly had nothing to do with the sale. Therefore, the issue of marijuana sale and usage was irrelevant to the offense charged, and injected a collateral matter into the trial. In *People v MacCullough,* 281 Mich 15, 274 NW 693 (1937), the Court held that the discretion of the trial court on cross-examination of collateral matters is not subject to review unless shown to have been grossly and oppressively abused. We find no such abuse in the transcript before us.

The trial court instructed the jury that it could return a verdict of guilty of the offense charged or not guilty. No mention was made of a possible included offense of attempted armed robbery under MCLA 750.529, 750.92; MSA 28.797, 28.287 and no request to so instruct was made by defendant. Defendant now claims that under *People v Patskan,* 387 Mich 701; 199 NW2d 458 (1972), attempted armed robbery is an included offense of

assault with intent to rob and, without citing any authority, the court *sua sponte* should have included appropriate jury instructions. Initially we note that only three Justices in *Patskan* held that attempted armed robbery was an included offense.[1] But assuming, *arguendo,* that attempted robbery armed is an included offense we find no authority at all that *sua sponte* the trial court must so instruct. *People v Wynn,* 386 Mich 627; 194 NW2d 354 (1972); *People v Carroll,* 49 Mich App 44, 51; 211 NW2d 233 (1973). This is not a case where the court affirmatively excluded consideration of lesser included offenses. See *People v Herbert Van Smith, Jr,* 388 Mich 457; 203 NW2d 94 (1972). There being no request for instructions exclusion was by implication only and such does not constitute reversible error. *People v Kelly,* 51 Mich App 28, 31–32; 214 NW2d 334 (1973); *People v Hoffmeister,* 52 Mich App 219, 222–223; 217 NW2d 58 (1974).

The jury had been out about one and one-half hours when at lunch break it informed the trial court that it had a question to ask. The court informed the jury it would take the question following lunch. At 1:50 p.m. the jury returned and the following exchange occurred.

"*The Court:* Mr. Moore and ladies and gentlemen of the jury I have a question that has been handed to me.

" 'Can the jury ask for a guilty verdict with clemency or must it be just guilty or not guilty'.

"In answer to that obviously the verdict must be guilty or not guilty but the jury may add with clemency."

The court immediately proceeded to explain its

---

[1] Two Justices concurred in result only and two Justices dissented stating they agreed with the disposition made by the Court of Appeals, 29 Mich App 354, 359; 185 NW2d 398 (1971), holding attempted robbery armed was not a lesser included offense.

answer as quoted in the footnote below.[2] The jury retired at 1:57 p.m. whereupon defendant objected to the charge. At 2:02 p.m. the jury returned, reporting it found "the defendant guilty and ask for clemency". Appellant, with some persuasion, argues a new trial is mandated under *People v Warner,* 289 Mich 516; 286 NW 811 (1939), and in particular argues that although the court explained it would not have to follow the jury's recommendation the explanatory comment was still defective because it failed to clearly inform the jury that it should arrive at its verdict based

---

[2] "Now let me explain that a little bit to you. If it should be guilty, we refer this matter to the probation officer of this court for a presentence investigation and report and they go in to it very very thoroughly,—very thoroughly. We know the history; we know the man's attitude. We know what his outlook is on life. We know what his future prospects are. We get all this, recommendations—in fact a presentence investigation is maybe five or six pages long and the court takes a lot of interest in these investigations, also the Supreme Court, and I say this,—Mr. Jackson knows it,—of course in the presentence investigation will be the past history of the defendant; his previous arrests, so-forth. What his present attitude is. What he lacks; what his aspirations are for the future. We take that all into consideration and beginning September 1st I think it is, and I would be glad to do it right now, the attorney for the defendant, and even the defendant himself is entitled to read the presentence investigation report and what the recommendations are from the probation department and I always give it to him.

"Like it says in the Bible, if we can save one sheep out of ninety-nine we are happy. That is the way we feel. You may bring back a verdict with clemency but I have to tell you I don't have to follow it. You may bring back a verdict with clemency but it is not binding on the Court but you should say guilty or not guilty. But you may say guilty with clemency but the ultimate determination of the case is with us, and that is the way it should be. I have heard the case, I will take into consideration everything that has been brought out in the evidence and that is all I can tell you.

"Is there anything else you want to know?

"*Mr. Moore:* No, your Honor.

"*The Court:* That is the way it is, but if a jury finds somebody guilty, or not guilty,—if you find him not guilty that is out. But if you find him guilty the responsibility is on me then. We have a probation report, we find out all about a convicted prisoner, we have him interviewed by psychiatrist and everybody and then they render a report to the court. Then I make a sentence. That is all I can tell you.

"*Mr. Moore:* Okay, fine."

upon the evidence and without consideration for the punishment to be administered. Plaintiff claims that *Warner, supra,* is clearly distinguishable and, further, that the judge followed the mandate of *Warner* when he explained he did not have to follow the jury recommendation and that he alone would impose sentence.

*People v Warner, supra,* is distinguishable. There, the jury had been out some eleven hours before inquiring of the court whether its verdict might be accompanied by a recommendation of clemency. There, the trial court's response was a mere "yes" response without qualification or any instruction that the court would not be bound or influenced by the jury's recommendation. Obviously, in *Warner* the jury was deadlocked and susceptible to being influenced by the court's single word response. Obviously, the jury could easily conclude that its recommendation on sentencing would somehow or other be employed by the court. No Michigan case is found directly in point since *Warner,* though the decision has been mentioned by reference on a few occasions.[3] In *People v Kern,* 6 Mich App 406, 411; 149 NW2d 216 (1967), where, upon returning a verdict of guilty, the jury recommended that defendant be remanded to the juvenile court and placed under psychiatric care, the court said:

"The function of the jury is to deduce the truth from the evidence and express that truth in the verdict. There is prejudicial error if there is conduct by the court calculated to draw the attention of the jury from the performance of their duty and to induce them to

---

[3] *People v Walker,* 371 Mich 599, 611; 124 NW2d 761 (1963), *People v Kern,* 6 Mich App 406, 411; 149 NW2d 216 (1967), *People v Cole,* 8 Mich App 250, 257–258; 154 NW2d 579 (1967), *rev'd,* 382 Mich 695; 172 NW2d 354 (1969).

rest their conclusion upon ulterior consideration. See *People v Warner,* 289 Mich 516; 286 NW 811 (1939).

"The trial judge, in this case, *indicated to the jury that he would not be bound by their recommendation.* The verdict was then stated in unequivocal language without further deliberation. There is nothing to indicate that defendant's rights were prejudiced." (Emphasis supplied.)

Other jurisdictions confronted with jury recommendations of mercy have come to mixed results. See Anno, *Recommendation of mercy in criminal case,* 17 ALR 1117, 1158; 87 ALR 1362, 1371; 138 ALR 1230, 1247. The editorial comment in 138 ALR 1247 summarizes as follows:

"The question has frequently arisen whether or not an instruction which informs the jury that they may make a recommendation of mercy is proper where there is no applicable statute authorizing such a recommendation. The cases involving this question are not in accord as respects results, but it is to be observed that although there is probably some disagreement among them as to theory, they may to a great extent be reconciled on the basis of the particular facts and circumstances involved. *Where, for example, the trial court expressly instructs the jury that he will not be bound by any recommendation they may make, there is a strong tendency to uphold the charge* even though it informs the jury that they may make a recommendation of leniency. Again, the court may take the view that although it is technical error to inform the jury that they may make a recommendation of mercy, the giving of such an instruction is not, under the particular circumstances shown, ground for a reversal. It is probably safe to conclude that whether or not an instruction permitting the jury to recommend clemency is proper depends in the last analysis upon the form and manner in which it is given and the likelihood or unlikelihood from all the circumstances of the case that it operated to the prejudice of the defendant." (Emphasis supplied.)

Though the issue is close, and while admittedly it would have been preferable had the trial court included in its explanatory comments a statement that the jury's determination of guilt or innocence should be made solely upon the evidence and without consideration of mercy, we conclude after carefully considering the form and manner and circumstances under which the explanatory comments were made, defendant was not prejudiced. After only one and one-half hours of debate the jury was hardly deadlocked and in a position to be strongly influenced by the court. Conceivably, the jury by lunch time had already agreed on a guilty finding but wished to convey to the court some recommendation of clemency. Clearly the court's extended comments removed from the jury any thought that its recommendation would influence the trial court. The trial court's remarks, albeit well motivated, were unfortunate and bound to invite appeal. Nevertheless, we conclude they do not constitute reversible error.

The final claim of error is that because of a defect in that portion of the Revised Judicature Act defining the jurisdiction of district courts in criminal cases, MCLA 600.8311; MSA 27A.8311, the district court before which the preliminary examination was held in this case was without jurisdiction. Basically, the claim is that the grant of criminal jurisdiction violates the "title-object" restriction contained in Const 1963, art 4, § 24, that "No law shall embrace more than one object, which shall be expressed in its title * * * ". The precise issue was argued orally before the Supreme Court October 11, 1974, in *People v Milton,* Docket No. 55466, and has been thoroughly discussed in recent legal publications.[4] We await the

---

[4] See 42 The Detroit Lawyer 6 (July 1974), for an article by Peter P.

decision of the Supreme Court but in the interim it is the opinion of this Court that there is no violation of the constitutional "title-object" provision. Assuming *arguendo* that such violation exists, the action of the district court in the instant case is valid and binding as an action of a de facto magistrate. *People v Townsend,* 214 Mich 267; 183 NW 177 (1921).

Affirmed.

O'Rourke and Robert W. Larin challenging the district court's criminal jurisdiction, and 42 The Detroit Lawyer 5 (August 1974) for an article by Edward R. Wilson, Jr., upholding the court's jurisdiction.